UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
PATRICK TRACY, et al., on behalf of themselves        :    FILED ELECTRONICALLY
and all other employees similarly situated,           :
                                                      :    No. 04-CV-06541 DGL(P)
                                    Plaintiffs,       :
                                                      :
                        v.                            :
                                                      :
NVR, INC.,                                            :
                                                      :
                                    Defendant.        :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

Defendant NVR, Inc. ("NVR") submits this Memorandum of Law in Opposition to

Plaintiffs' Motion to Amend the Complaint (docket entry 336). In their motion, Plaintiffs seek

leave to add NVR's Chairman, CEO, and VP of Human Resources as individual defendants in

this action, which has been pending solely against NVR for almost four years.[1] Plaintiffs'

proposed amendment is futile because it attributes no specific conduct to any of the three

individuals whom Plaintiffs seek to add as defendants, instead relying exclusively on their status

as officers of NVR. In the absence of specific allegations that could establish that the individuals

are "employers," the proposed complaint fails to state a claim against those individuals on which

relief can be granted. Moreover, Plaintiffs' effort to substantially change the configuration of

this case after years of litigation would impose unfair prejudice on NVR and potentially on the

---

[1] Plaintiffs filed their Complaint (docket entry 1) in this matter on October 29, 2004. Plaintiffs
filed their First Amended Complaint (docket entry 4) on November 11, 2004. Plaintiffs filed a
Second Amended Complaint (docket entry 80) on March 14, 2007.

members of the class Plaintiffs purport to represent. The Court should, therefore, deny

Plaintiffs' Motion to Amend in its entirety.

**LEGAL ARGUMENT**

## I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEIR PROPOSED AMENDMENT IS FUTILE.

The claims that Plaintiffs now seek to assert against NVR's current Chairman, Dwight

Schar; NVR's current President and CEO, Paul Saville; and NVR's current Vice President of

Human Resources, Joseph Madigan (collectively the "Individuals") fail as a matter of law.

Plaintiffs do not attribute any specific conduct to any of the Individuals pertaining to Plaintiffs'

overtime pay claims in this action, and the vague and speculative allegations that Plaintiffs make

in their proposed Third Amended Complaint about the Individuals' level of authority as officers

of NVR are insufficient to establish that the Individuals are "employers" within the meaning of

the Fair Labor Standards Act ("FLSA"). For that reason, Plaintiffs' claims against the

Individuals could not survive a motion to dismiss under prevailing Supreme Court precedent, and

the Court should deny Plaintiffs' Motion to Amend on grounds of futility.

### A. Plaintiffs Mischaracterize Their Burden in Seeking To Further Amend their Complaint And Ignore the Applicable Pleading Standard.

Plaintiffs' Memorandum of Law in Support of their Motion to Amend the Complaint

(docket entry 337) ("Plaintiffs' Mem.") ignores an axiomatic principle concerning their burden

in seeking leave to amend the pleadings. Although Fed. R. Civ. P. 15(a) provides that leave to

amend should "be freely given when justice so requires," it is also well established that a "court

may deny leave to amend … where the amended pleading is considered futile." *Cimino v. Glaze*,

228 F.R.D. 169, 171 (W.D.N.Y. 2005) (Larimer, J.) (citing *John Hancock Mut. Life Ins. Co. v.

Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994)) (emphasis added); *Black v. Selsky*, 2002

U.S. Dist. LEXIS 27328 (W.D.N.Y. Jan. 7, 2002) (Larimer, J.) (explaining leave to amend a

complaint should not be granted when the proposed amendment would be futile). "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." *Cimino*, 228 F.R.D. at 171 (citing *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

In light of the heightened pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and its progeny, a motion for leave to amend a complaint must be denied as futile if it does not state a *plausible* claim for relief. In *Twombly*, the Supreme Court rejected the Rule 12(b)(6) standard that permitted dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sengillo v. Valeo Elec. Sys.*, 536 F. Supp. 2d 310, 312 (W.D.N.Y. 2008) (Larimer, J.). Instead, "[A] plaintiff's obligation … requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly* and explaining that it modified the pleading standard). This modified standard requires plaintiffs "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) (explaining that "plausibility standard" is not limited to antitrust context presented in *Twombly* action). Following this new standard, a pleading is sufficient only if it "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests" and "allege[s] facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

Plaintiffs' Motion to Amend entirely ignores this new pleading standard. Instead, Plaintiffs offer the platitude that leave to amend should be freely granted, with no discussion of the standard for measuring the sufficiency of the new claims they seek to assert. *See* Plaintiffs' Mem., pp. 4-5. It is telling that all of the cases Plaintiffs cite on this issue predate the Supreme Court's May 2007 *Twombly* opinion and were, therefore, decided under the outmoded "no set of facts" standard that the Court found to have "earned its retirement." *See* 127 S.Ct. at 1969.[2] Plaintiffs' request for leave to file a further amended pleading is, therefore, premised on an outdated and "retired" legal standard, and the Court should disregard the misplaced discussion of this issue in Plaintiffs' Memorandum.

**B.**     **Plaintiffs' Proposed Amendment is Futile Because it Would Not Survive A Motion to Dismiss.**

The allegations in Plaintiffs' proposed Third Amended Complaint are far too vague to establish that the Individuals were Plaintiffs' "employers" because Plaintiffs are unable to identify a single instance in which any of the Individuals exercised supervision or oversight with respect to Plaintiffs' day-to-day employment. For that reason, Plaintiffs' claims against the Individuals are not plausible and would be subject to dismissal for failure to state a claim.

**1.**     **The Proposed Third Amended Complaint Relies on Implausible and Conclusory Allegations Against the Individuals.**

Plaintiffs move to further amend their Complaint to add NVR's current Chairman of the Board, current President, and current Vice President of Human Resources as individual defendants based solely on the office that each of the Individuals holds. Plaintiffs' proposed

---

[2] In the section of their brief pertaining to the substantive issue of the Individuals' status as putative "employers," Plaintiffs' cite *EEOC v. Thomas Dodge Corp.*, 524 F. Supp. 2d. 227 (E.D.N.Y. 2007). This case discusses the *Twombly* decision and the Second Circuit's application of the plausibility pleading standard. *See* 524 F. Supp. 2d. at 235. Plaintiffs' Memorandum fails to acknowledge or address this aspect of the *Thomas Dodge* case.

Third Amended Complaint fails to state a claim against the Individuals under the FLSA because it does not attribute any specific conduct to any of the Individuals. Instead, Plaintiffs set forth a raft of essentially identical and conclusory allegations regarding each of the Individuals to the effect that Messrs. Schar, Saville, and Madigan have the power and authority to "to hire and fire employees," "supervise[] and control[] employees' work schedules and/or conditions of employment," "determine[] the rate and method of employees' payment," and "maintain[] employees' employment records." *See* Proposed Third Amended Complaint, appended to Affirmation of Cristina Bahr in support of Plaintiffs' Motion to Amend (docket entry 338) ("Bahr Aff."), Ex. A., at ¶¶ 29-32 (Mr. Schar); ¶¶ 52-55 (Mr. Saville); ¶¶ 78-81 (Mr. Madigan). The only factual allegations offered to support these conclusions are those that identify the Individuals' current and former positions with NVR and those alleging that the Individuals have knowledge of Plaintiffs' FLSA exempt status. *Id.* at ¶¶ 17-36 (Mr. Schar); ¶¶ 37-59 (Mr. Saville); ¶¶ 60-85 (Mr. Madigan).

Plaintiffs' vague boilerplate allegations utterly fail to "actively and plausibly" support Plaintiffs' stated conclusions and fail to raise their proposed pleading above its purely speculative nature. *See Port Dock & Stone Corp*, *supra*; *see also Sengillo, supra*. To the contrary, Plaintiffs' assertions that the Individuals exercised authority over Plaintiffs' schedules and day-to-day working conditions are facially *implausible* and border on the absurd. Plaintiffs claim that the Individuals exert significant control over their day-to-day employment and schedules in a corporation of significant size that is spread from Michigan to South Carolina. NVR Annual Report for 2007, appended to Bahr Aff., Ex. B, p. 2 (reflecting that NVR operates 4 homebuilding operations in 13 states, in addition to mortgage banking operations). It simply would not be possible for the highest ranking officers of the Company to "actively manage" or

"supervise" the vast number of NVR's employees from the Company's corporate headquarters in Virginia. *Id.,* p. 5 (reflecting that NVR has approximately 4,119 employees, including over 800 sales personnel). The allegation that Mr. Schar – the Chairman of a multi-billion dollar company spanning the Eastern United States – maintains Plaintiffs' employment records underscores the overall implausibility of this proposed pleading. *See* Proposed Third Amended Complaint, ¶ 32. For this reason, Plaintiffs' proposed pleading represents what the Second Circuit rejected in *Port Dock & Stone Corp*, and what the Supreme Court strove to eradicate in *Twombly.*

The implausibility and insufficiency of this pleading should come as no surprise. Plaintiffs have conceded that the very information upon which they now rely to assert these allegations, NVR's 2007 Annual Report, is insufficient to substantiate a claim against any putative defendant other than NVR, itself. During the April 23, 2008 conference in this matter, the Court acknowledged Plaintiffs' counsel's admission that the publicly available information provided an insufficient basis to amend the Complaint to add the Individuals and noted that "a motion to amend at this juncture – seems to me to be an uphill battle in the absence of facts to suggest that there is an entity that is acting as a joint employer." *See* Transcript of April 23, 2008 conference (Exhibit A to the Declaration of Barry J. Miller ("Miller Decl."), filed contemporaneously here with) at 34:1-12, 36:1-5. As Plaintiffs' counsel has conceded, no basis exists to include these individuals in this matter. At bottom, the claims Plaintiffs seek to assert against the Individuals in their proposed Third Amended Complaint are facially implausible.

### 2. Plaintiffs' Memorandum Ignores the Standard for Determining Whether Individuals Are "Employers" Under the FLSA.

Even if the Court were willing to overlook the extremely vague and speculative nature of Plaintiffs' allegations in their proposed amended pleading, Plaintiffs could not establish that the

Individuals are "employers" within the meaning of the FLSA.[3]  Construed in the most charitable

light, Plaintiffs' claims against the Individuals are premised on nothing more than the

Individuals' general awareness of the facts giving rise to Plaintiffs' claims against NVR.  Such

awareness falls far short of the standard for individual liability under the FLSA.

Plaintiffs' Memorandum provides almost no analysis of the standard for individual

liability under the FLSA, and the few cases Plaintiffs cite do not support their claim that the

Individuals are proper defendants in this action.  Plaintiffs first rely on a case reaching the

irrelevant conclusion that the statutory term "employee" in the FLSA is to be construed broadly.

*See* Plaintiffs' Mem., p. 6, (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992))

(setting forth the proposition that FLSA has been applied "in such a way as to 'stretch[] the

meaning of **'employee'** to cover some parties who might not qualify as such under … traditional

agency law.")  (emphasis added).  NVR has never denied that Plaintiffs or the members of the

class they purport to represent are its employees, and the analysis in the *Darden* case as to

whether the plaintiff was an "employee," rather than an independent contractor, to the

corporation for which he performed services has no application to Plaintiffs' Motion to Amend.

Plaintiffs also cite *Aguilar v. Complete Landsculpture, Inc.*, an unpublished decision on a

plaintiff's motion for conditional certification of an FLSA collective action.  The *Aguilar*

decision merely notes that individual liability under the FLSA is possible and expressly declines

[3] Plaintiffs' Memorandum contains no analysis or argument to the effect that the Individuals are
proper defendants with respect to the claims under New York Labor Law included in Plaintiffs'
Second Cause of Action in the proposed amended pleading.  However, Plaintiffs' proposed Third
Amended Complaint appears to assert New York state law claims against all "Defendants."  *See*
Bahr Aff., Ex. A, ¶ 137.  The standard for an individual's status as an "employer" under New
York Labor Law is the same as that applied under the FLSA.  *See, e.g., Jiao v. Shi Ya Chen*,
2007 U.S. Dist. LEXIS 96480 (S.D.N.Y. Mar. 30, 2007) (collecting authorities); *Chen v. Street
Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 289 (E.D.N.Y. 2005).  Therefore, Plaintiffs' putative
claims against the Individuals under New York Labor Law fail for the same reason as the claims
under the FLSA.

to reach the question of whether the president of the corporate employer was a proper defendant. *See* 2004 WL 2293842, *3 ("Plaintiffs may be able to show under the FLSA definition that Strempek is their employer, and the court can determine later whether he is."). The case does not provide any metric by which to analyze whether the allegations in the proposed Third Amended Complaint are sufficient to state a claim against any of the Individuals.

The only remaining case that Plaintiffs cite pertaining to individual liability under the FLSA, *Herman v. RSR Security Serv. Ltd.*, 172 F.3d 132 (2d Cir. 1999), illustrates why their proposed claims against the Individuals must fail.[4] In *Herman*, the Second Circuit explained the pertinent legal framework in its entirety. The court explained that in analyzing whether an individual is or is not an "employer" under the FLSA, the "overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Id.* at 139 (internal citations omitted). The relevant factors of the "economic reality" test focus on whether the individual:

> (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Id.* Importantly, no single factor in this test is determinative. *See Heinemann v. Howe & Rusling*, 260 F. Supp. 2d 592, 598 (W.D.N.Y. 2003) (Larimer, J.) (explaining no single factor of "economic reality test" is determinative)*; Astudillo v. U.S. News & World Report*, 2005 U.S. Dist. LEXIS 92, *5 (S.D.N.Y. January 6, 2005) (same). Tellingly, Plaintiffs do not examine these factors in their Memorandum of Law. *See* Plaintiffs' Mem., 6-9. The reasoning for Plaintiffs' legal leapfrog becomes apparent upon reviewing cases applying this test.

---

[4] Plaintiffs' citations to *EEOC v. Thomas Dodge Corp.* (a discrimination case) and *Ellis v. Chao* (a case pertaining to the Secretary of Labor's supervision of a union election under the Labor-Management Reporting and Disclosure Act) at page 6 of Plaintiffs' Memorandum have no bearing on individual liability under the FLSA.

As *Herman* illustrates, the test for "employer" status is not easily met in the case of individual officers of a large corporate employer like NVR. There, the Second Circuit found that a shareholder and member of the board was an "employer" under the FLSA where he had the "the authority to hire employees" who ultimately managed the individual plaintiffs, and occasionally supervised and controlled the plaintiffs' work schedules and their conditions of employment. 172 F.3d at 140. For example, the individual at issue was involved in assigning certain plaintiffs to particular locations and instructed managers to review and revise the company's employment application forms. *Id.* He also participated in the method of the employee's payment when he ordered a stop to the illegal pay practice of including the plaintiffs on 1099 forms as independent contractors. *Id.* Another recent case, *Jiao v. Shi Ya Chen*, 2007 U.S. Dist. LEXIS 96480 (S.D.N.Y. Mar. 30, 2007), further illustrates that the Plaintiffs have not met their burden to include Messers. Schar, Saville, and Madigan as individual defendants in this matter. There, the court held the president of the company was an "employer" under the FLSA because the plaintiff worked for him directly, and the president supervised plaintiff's work responsibilities and employment conditions, hired the plaintiff and informed him of his pay rate, paid him, and set his schedule. *Id.* at *34-35. Indeed, these two recent decisions from courts sitting in New York are consistent with a long pattern of cases holding that, in order to be subject to individual liability under the FLSA, an officer of a corporate employer must engage in direct oversight of and interaction with plaintiff employees.[5]

---

[5] *See, e.g.*, *Reich v. Priba Corp.*, 890 F. Supp. 586, 590 (N.D. Tex. 1995) (holding sole stockholder and "driving force" behind night club individually liable where the individual acted as entrepreneur and promoter, hired waitresses, oversaw managers, planned the physical expansion of the club, and participated in major policy decisions); *Martin v. W.E. Monks & Co.*, 805 F. Supp. 500, 501 (S.D. Ohio 1992) (individual who acted as president, treasurer, and majority shareholder, and who exerted control over areas of management by assigning projects to specific engineers, training engineers, hiring and firing personnel, and assigning wages, could be

The cases in which courts have found individuals to be "employers" within the meaning of the FLSA stand in stark contrast to the present matter. Here, Plaintiffs cannot even go so far as to claim that any significant number of the members of the putative plaintiff class *have ever met or spoken with* Messrs. Schar, Saville, or Madigan, much less that any of the Individuals exercised any quantum of control over any Plaintiff's employment. The remarkably thin and speculative bases that Plaintiffs proffer as their grounds for adding the Individuals as defendants in this action only serve to illustrate the degree to which their proposed claims against the Individuals fail any test of plausibility.

### 3. Plaintiffs' Allegations Based on the Individuals' Job Titles Cannot Establish that the Individuals are "Employers" under the FLSA

In their proposed Third Amended Complaint, Plaintiffs rely exclusively on Messrs. Schar's, Saville's, and Madigan's titles as Chairman of the Board, Chief Executive Officer, and VP of Human Resources in support of their claims that the Individuals qualify as "employers" under the FLSA. Bahr Aff., Ex. A, ¶¶ 17 – 85 (asserting allegations "upon information and

---

individually liable); *Dole v. Haulaway, Inc.*, 723 F. Supp. 274, 286 (D. N.J. 1989) (finding president and sole shareholder of corporation who exercised day-to-day control over the affairs of the company, including approving promotions and raises, hiring and firing personnel, and establishing other terms and conditions of employment, could be individually liable); *Gusdonovich v. Bus. Info. Co.*, 705 F. Supp. 262, 268 (W.D. Pa. 1985) (holding owners and officers of corporations who hired and fired employees, set the hours of employment and established wages, could be individually liable); *Hodgson v. Veterans Cleaning Serv., Inc.*, 351 F. Supp. 741, 748-49 (M.D. Fla. 1972) (holding principal owner and operating manager responsible for time and payroll records individually liable for FLSA violations where the individual personally signed all payroll checks); *Walling v. Gonzalez*, 67 F. Supp. 518, 519 (D. P.R. 1946) (holding that managing partners of an enterprise could be liable under statute because some partners hired the plaintiffs and others "permitted" the plaintiffs to work, but finding no liability under the facts of the case). *See also*, *Brennan v. Whatley*, 432 F. Supp. 465, 469 (E.D. Tex. 1977) (finding that president, treasurer, and chairman of the board who made "all of the decisions which concern the running of the company" could be individually liable under the FLSA); *Brennan v. Control Mfg., Inc.*, 1975 U.S. Dist. LEXIS 14265, *1-2 (D. Ariz. Jan. 20, 1975) (individual was an "employer" where he "was actively engaged in managing the day-to-day affairs" of the corporation and was "responsible for its wage and payroll practices.").

belief" that the Individuals did or should have known various things by virtue of their respective titles).  As a preliminary matter, the titles that the Individuals hold are of no consequence to their status as Plaintiffs' putative employers.  The "economic reality test" looks beyond mere titles and focuses on the "reality" of the situation.  *See generally Herman, supra*, at 139.  Plaintiffs neither point to any facts nor argue that any of the Individuals exercised the authority to hire or fire Plaintiffs, supervised and controlled Plaintiffs' work schedules or conditions of employment, or took any identifiable steps to maintain their employment records – three of the key elements to economic reality test.

4.     **The Assertions in Plaintiffs' Memorandum Regarding NVR's Annual Report Cannot Establish that the Individuals Are "Employers" Under the FLSA.**

In addition to the allegations in their proposed Third Amended Complaint, Plaintiffs include several arguments in their Memorandum for the Individuals' liability as "employers" based on allegations that are absent from their proposed complaint.  First, Plaintiffs point to NVR's Annual Report and argue that because it describes this lawsuit (as it is required to do by the Securities Exchange Act of 1934), the Individuals are aware of and approved Plaintiffs' FLSA exempt status and are thereby "employers" under the FLSA.  Although courts analyzing whether an individual constitutes an "employer" have considered numerous factors, there is no court of which Defendant is aware that has relied on a filing mandated by the Securities Exchange Act of 1934  – such as NVR's 2007 Annual Report –  as part of this analysis.  By signing an annual report, individuals verify that the report is accurate to the best of their knowledge – not that they authorized or controlled each business decision described in the report.  *See generally Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 410 (S.D.N.Y. 2001).  Under Plaintiffs' line of reasoning, Mr. Schar and Mr. Saville would be deemed to have exerted control over NVR's day-to-day purchases of drywall

and insulation merely because these issues are also discussed in the Annual Report.  *See* Bahr

Aff., Ex. B, at p. 11.  Any such suggestion is simply illogical.  Rather, the analysis of whether

the individuals constitute "employers" should focus on the "reality" of the circumstances, and, in

reality, these individuals do not meet the definition of an "employer" under the FLSA.

In their Memorandum, Plaintiffs also attempt to argue that Mr. Schar's awareness of

certain specific facts recited in the Annual Report somehow make them "employers" under the

FLSA.  Plaintiffs note that, as a result of reviewing the Annual Report, Mr. Schar and Mr. Saville

were aware of the recitations in that document to the effect that the Company's "preferred

marketing method is for customers to visit a furnished model home," and that "sales

representatives are compensated predominantly on a commission basis."  From Mr. Schar's and

Mr. Saville's awareness of these facts, Plaintiffs leap to the conclusion that these Individuals

were, in some unspecified way, involved in making decisions regarding compensation or

scheduling of the Company's Sales & Marketing Representatives ("SMRs").  Plaintiffs' Mem.,

p. 7.  Again, the underlying allegations are absent from Plaintiffs' proposed amended pleading,

but even if asserted in a complaint, Plaintiffs' rampant speculation regarding the Individuals'

involvement in Plaintiffs' day-to-day employment based on the content of NVR's Annual Report

would fall well below the standard of plausibility.  However, NVR notes that neither of the

premises on which Plaintiffs' rely for this logical leap bears any necessary relation to the FLSA

claims that they have asserted against NVR and seek to assert against the Individuals.  That

individuals are paid on a commission basis does nothing to suggest a violation of the FLSA.  In

fact, the Department of Labor's regulations contain detailed provisions on the payment of

commissions to non-exempt employees.  *See* 29 C.F.R. §§ 778.117 – 778.122.  Similarly, there is

no inconsistency between a business model that involves the use of furnished model homes and

the employment of outside sales personnel who, in addition to demonstrating furnished model homes, also demonstrate home sites, houses under construction and other completed homes, and who also engage in various other activities away from the model home in promoting sales. The two facts that Plaintiffs claim Mr. Schar and Mr. Saville must have known fail by a wide margin to establish, plausibly, that either of them was involved in making decisions related to Sales & Marketing Representatives' compensation, much less that either of them had any direct involvement in the day-to-day supervision or scheduling of any SMR, as would be required to meet the standard for "employer" status discussed in *Herman* or *Chen*.[6]

### 5. Plaintiffs' Assertions Regarding the Individuals' Participation in the Reclassification of a Different Group of Employees Are Demonstrably False and Irrelevant.

In their Memorandum, Plaintiffs' also attempt to construct an argument that Mr. Schar and Mr. Saville "must" have been involved in setting SMR's compensation from the assertion that the Company reclassified a different position in 2006.[7] Again, Plaintiffs offer only hollow *ipse dixit* and circular reasoning based on allegations absent from their proposed Third Amended Complaint. Plaintiffs argue that because the decision to reclassify the Company's Sales &

---

[6] Plaintiffs' desperation in attempting to identify a basis for the Individuals' putative liability under the FLSA is further illustrated by their reference to a memorandum on which Mr. Schar was copied. Plaintiffs attempt to characterize Mr. Schar as a micromanager, asserting that he routinely involves himself in such decisions as "whether to play music for customers on hold and how long customers should be kept on hold when calling in for customer service." Plaintiffs' Mem., p.8. This shamelessly overstated assertion is based on the fact that Mr. Schar was listed in the CC: line of a memo, along with a half dozen other NVR executives, that was sent to every manager in the Company as part of an updated customer service policy more than fifteen years ago (and before Mr. Schar assumed his current position as Chairman). *See* Bahr Aff., Ex. C.

[7] Again, Plaintiffs' reasoning is based on a mischaracterization of the relevant of events. The settlement agreement to which Plaintiffs refer does not purport to require NVR to reclassify its Sales & Marketing Associates. In fact, NVR made that decision unilaterally more than a year before reaching the settlement agreement to which Plaintiffs refer. *See* docket entry 88, Ex. 1 (dated February 6, 2007 and providing relief to SMAs who were not paid overtime prior to January 1, 2006).

Marketing Associates was (in Plaintiffs' view) "significant," "there can be little doubt that the individual defendants Schar and Sayville [sic] were involved" in those decisions. Plaintiffs' Mem. pp. 7-8. From this entirely manufactured premise, Plaintiffs conclude that "logically, [Mr. Schar and Mr. Saville] are still involved in the significant decision to continue to pay SMRs as exempt." *Id*., p. 8. Such "logic" does nothing to "actively and plausibly suggest" that the Individuals are employers under the FLSA, and this argument cannot assist Plaintiffs in pleading a claim for relief against the Individuals that would survive a motion to dismiss.

Even if Plaintiffs had a basis for their assertion that the Individuals were somehow involved in compensation decisions relating to the Company's SMRs (and they clearly do not), Plaintiffs' argument would rest entirely on one prong of the economic reality test – Plaintiffs' compensation. As Judge Larimer aptly observed, no single element of this test is determinative. *See Heineman*, 260 F. Supp. 2d at 598. Plaintiffs have failed to establish that in "reality" these individuals "controlled" any of the broad class of individuals whom Plaintiffs purport to represent in this matter.

### 6.    Plaintiffs' Assertions Regarding Mr. Madigan's Knowledge of NVR's Practices Do Not Establish that He Is Their "Employer" for Purposes of the FLSA.

In their Memorandum, Plaintiffs also attempt to show that Mr. Madigan is an "employer" based on his title and his knowledge of NVR's practices. Plaintiffs point out that Mr. Madigan holds the title of Vice President and oversees all of the Company's human resources functions. Plaintiffs' Mem., p. 8. Plaintiffs' argument with respect to Mr. Madigan is strained and flawed. Plaintiffs heavily rely on his affidavit to argue he exercised control and authority over Plaintiffs' compensation and duties. However, nowhere in his affidavit does he state, nor do Plaintiffs point to any paragraph stating that he has any such authority or control. The affidavit merely describes various aspects of NVR's business and operations. As reflected in the cases cited above, Mr.

Madigan's mere knowledge of certain of NVR's human resources practices is insufficient to establish that he is the Plaintiffs' employer, where Plaintiffs offer no factual allegations to suggest that he was directly involved in their management or supervision.

Plaintiffs' also attempt to argue that Mr. Madigan is the Plaintiffs' "employer" based on the fact that a compensation policy (Bahr Aff., Ex. D) was originated by NVR's Senior Vice President of Human Resources. Plaintiffs' effort in this regard fails on its face because, when the policy they reference was issued in January 2007, Mr. Madigan was not the Senior Vice President of Human Resources. *See* Bahr Aff., Ex. E, ¶ 2 (noting in April 2007 that Mr. Madigan was the Vice President of Human Resources, a position that reported to the Senior Vice President). Moreover, the policy describes the ways in which NVR employees are compensated, but it does not state that its originator (who was not, in fact, Mr. Madigan) ultimately determines Plaintiffs' rate of pay or method of payment. Even assuming Mr. Madigan had exercised control over Plaintiffs' compensation, that fact alone would be insufficient for him to be considered an "employer" under the FLSA. *See Astudillo*, 2005 U.S. Dist. LEXIS at *5 (explaining no single factor of the "economic reality test" is determinative). Plaintiffs have failed to put forth any plausible assertion that Mr. Madigan exercised control over Plaintiffs' employment, and the claims they seek to assert against him fail as a matter of law.

## II. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEY HAVE UNDULY DELAYED IN SEEKING LEAVE FOR THEIR PROPOSED AMENDMENT, CAUSING UNFAIR PREJUDICE TO NVR.

Plaintiffs' have engaged in a years-long delay accompanied by a pattern of seeking dilatory extensions of time in which to amend their pleadings in this matter. Their effort to change the scope of this litigation at this stage is unfairly prejudicial to NVR and may jeopardize the due process interests of the class members Plaintiffs purport to represent. Moreover, their proposed amendment would not increase the potential recovery of any participant in this

litigation. The Court should, therefore deny Plaintiffs' Motion to Amend on the grounds that it is characterized by undue and unfairly prejudicial delay.

### A. Plaintiffs Have Unjustifiably Delayed in Seeking Leave Further To Amend Their Complaint.

Plaintiffs have inexplicably waited nearly four years to attempt to assert claims against the Individuals in this action. Plaintiffs did not even raise the prospect of moving to amend their complaint until November 2007, more than three years after commencing the case against NVR, when they filed their first motion to extend the time in which to amend the pleadings (docket entry 246). Since that time, Plaintiffs have secured four extensions of time in which to seek leave to further to amend their complaint. *See* docket entry 291 (extending deadline for motion to amend to 2/29/08); docket entry 312 (extending deadline for motion to amend to 3/31/08); docket entry 329, p. 82 (extending deadline for motion to amend to 4/30/08); docket entry 335, pp. 36-37 (extending deadline for motion to amend to 5/30/08).

It is well established that a trial court may deny a motion for leave to amend a complaint due to the plaintiffs' undue delay in seeking such leave. *Barrows v. Forest Labs*., 742 F.2d 54, 58 (2d Cir. 1984) ("Considerations of undue delay, bad faith, and prejudice to the opposing party [are] touchstones of a district court's discretionary authority to deny leave to amend."). Where a plaintiff seeks to amend his pleading long after the proceedings have commenced, "[i]t is clear that plaintiff bears the burden of explaining a delay in seeking to amend the complaint." *See Hartman v. County of Nassau*, 2008 WL 1923127, *20 (E.D.N.Y. 2008) (citing *Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 47 (2d Cir. 1983)). In the absence of a compelling justification, courts have routinely denied motions to amend after delays of the sort that Plaintiffs have perpetrated here. *See USX Corp. v. Barnhart*, 395 F.3d 161, 169 (3d Cir. 1998) (no abuse of discretion to deny leave to amend complaint where plaintiffs waited over three years to amend

and had notice of events underlying proposed amendments prior to filing both original complaint and first amended complaint); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (court properly denied motion for leave to amend on grounds of undue delay where party sought amendment three years after original complaint and two years after first amended complaint, when moving party knew facts on which the proposed amendment was based at time of prior pleadings); *Borsack v. Ford Motor Co.* 2007 WL 2142070, *10 (S.D.N.Y. 2007) (denying motion to amend where plaintiff sought to add claim over three years after action was initiated and plaintiff had been on notice of potential claim for at least one year before filing motion); *Williams v. Stanelle*, 2007 WL 2274876, *1 (M.D. Ga. 2007) (denying motion to amend because "permitting Plaintiff to further amend his complaint [nearly three years into the litigation] would create a substantial delay in the resolution of his original claims.").

Plaintiffs have offered no viable justification for their extended delay in seeking to amend their complaint to add the Individuals as defendants. Having secured multiple extensions of time in which to move to amend their complaint, Plaintiffs ultimately base their proposed new claims on nothing more than the offices held by the Individuals, readily available information from NVR's annual reports and websites that has been publicly available since the inception of this litigation. *See* Plaintiffs' Mem. p. 7, (Mr. Schar was Chairman and CEO beginning in 1993, and Mr. Saville was President and CEO beginning in July 2005); Bahr Aff., Ex. E, ¶ 3 (Mr. Madigan has been VP of Human Resources since 1997).

Plaintiffs' only attempt to explain their years-long delay is to point to NVR's ostensible "refusal" to provide to certain discovery requests that Plaintiffs have served. *See* Plaintiffs' Mem., pp. 3, 5. Again, Plaintiffs' position is premised on a mischaracterization. Plaintiffs' discovery requests regarding putative additional defendants were a grossly overbroad fishing

expedition premised on nothing more than Plaintiffs' desire to harass NVR and its officers.[8]

NVR has not unilaterally declined to respond to those requests, and it strains credulity for

Plaintiffs, who have filed motions to compel and other protestations regarding the adequacy of

NVR's discovery responses on a wide variety of issues, to suggest that they would idly allow

NVR to "refuse" to respond to proper requests. To the contrary, NVR sought the intervention of

the Court, and the Court found that Plaintiffs' requests were overreaching, improper, and not

supported by any foundation for Plaintiffs' speculative assumption that there must be some

additional prospective defendants whom they could add to this action. *See* Miller Decl., ¶ 8;

Transcript of April 23, 2008 conference, Miller Decl., Ex. A, pp. 32-33.[9] Plaintiffs' misplaced

efforts to blame NVR for their extended delay in seeking leave to amend their complaint is

inconsistent with the clear procedural record in this matter and fails to excuse their failure to

raise the issues in their Motion to Amend promptly.

    **B.**    **Plaintiffs' Extensive Delay Poses Unfair Prejudice To NVR and Members of the Putative Class.**

In addition to being unjustifiably late, Plaintiffs' proposed amendment to their complaint

would pose substantial prejudice to NVR. Courts have recognized that such prejudice is to be

considered when evaluating a motion for leave to amend a complaint. *See McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (motion to amend may be denied for reasons

---

[8] To illustrate the gross overbreadth of Plaintiffs' requests, the interrogatories at issue called on NVR to identify (including by name, address, place of employment, and title) *all* employees of any subsidiary or affiliate of NVR and *all* employees of any entity in which NVR or any of its subsidiary or affiliates had any ownership interest. *See* Miller Decl., Ex. B, pp. 2, 4-5. Similarly, the document requests at issue sought "Any and all Documents Concerning any employee or any Person who furthers the business purpose" of NVR or its subsidiaries or affiliates. *See* Miller Decl., Ex. C, p. 3.

[9] The Court noted, "… I'm just struggling with the notion … in the absence of any factual allegation to suggest that these people were, in fact, employed jointly with another entity, that I should permit discovery into what the CEO of the company does or did …" Transcript, p. 32.

including prejudice to defendant) citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (same).  Moreover, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Hartman*, *supra*, * 9 citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (internal quotation omitted).  NVR has, after considerable wrangling regarding the timing and scope of the proceeding, completed the deposition of the original named Plaintiff, Patrick Tracy.  Miller Decl., ¶ 4.  If the complaint in this matter is amended to add the Individuals as parties, the defendants will be forced to reopen Mr. Tracy's deposition to examine him regarding his claims against the Individuals.  *Id.*, ¶ 5.  In a similar vein, NVR has propounded written discovery requests to all Plaintiffs and selected a sample of the Plaintiffs to depose based on the configuration of the case as it stood in November 2007.  *See* Miller Decl., ¶ 3.  If Plaintiffs are allowed to amend their complaint yet again, NVR will be forced to issue supplemental discovery requests to the 156 opt-in Plaintiffs and reassess the sample of deponents it has selected based on the considerations raised by adding new defendants to the action.  *See* Miller Decl., ¶ 5.  Imposing this additional effort and burden on NVR cannot be justified in view of the vaporously thin nature of the claims Plaintiffs seek to add to the complaint and their years of delay in seeking to do so.

Allowing Plaintiffs' Motion to Amend may also pose prejudice to the putative class members in this case.  In November 2006, at the Court's instruction, the parties undertook to provide notice to hundreds of members of the putative FLSA class regarding the pendency and nature of this action and their right to join the case.  *See* docket entry 141.  The information provided to putative class members was based on the action as it was configured by the Second Amended Complaint.  It is entirely conceivable that some members of the putative class may

have made a different decision about whether or not to join this action if they had been notified that the named Plaintiff also sought to assert claims against individual officers of the Company. Prospective opt-in plaintiffs are entitled, as a matter of due process, to make a decision as to whether to join an FLSA collective action based on an accurate description of the claims and proceedings. *See, e.g., Lee v. ABC Carpet & Home*, 2008 WL 2073932, *1 (S.D.N.Y. 2008) ("The benefits of proceeding in a collective action 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'") (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)); *Mowdy v. Beneto Bulk Transp.*, 2008 WL 901546, *8 (N.D. Cal. 2008) (The FLSA requires that notice to potential plaintiffs be accurate and timely, so that potential plaintiffs "can make informed decisions about whether to participate) (internal citation and quotations omitted); *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 553 (N.D. Ill. 2008) (notice and opt-in procedure necessitated in FLSA collective actions "based on due process considerations"); *Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 460 (W.D. Pa. 2007) ("Potential plaintiffs in an opt-in action, who are not even before the court without their consent, are clearly afforded greater due process protections than absent opt-out class members …") (internal citation omitted). By delaying their request for leave to amend their complaint to assert claims against individual defendants until after the notice and opt-in process in this case had run its course, Plaintiffs and their counsel have deprived members of the putative class of information that they may have found relevant in deciding whether to join this action.

Finally, the denial of Plaintiffs' Motion to Amend poses no substantial prejudice to Plaintiffs. If Plaintiffs could establish that the Individuals were proper defendants under the FLSA, any liability would be joint and several with NVR. *See, e.g.*, *Lillard v. Serv. Solutions*

*Corp.*, 2007 WL 1623903, *3 (M.D. Tenn. 2007) (individual and corporate defendants subject to joint and several liability under FLSA); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005) (individual who was deemed an "employer" under the "economic realities test" was jointly and severally liable with the corporate defendant); *Moreno v. Edcare Mgmt.*, 243 F.R.D. 258, 259 (W.D. Tex. 2007) ("All entities that are employers within the meaning of the FLSA are jointly and severally liable for all damages that stem from failure to comply with the provisions of the FLSA"). Adding the Individuals as defendants in this action would not, therefore, increase the potential recovery of any Plaintiff. When weighed against the substantial prejudice posed to NVR and the potential prejudice to members of the previously notified FLSA class, Plaintiffs' meager interest in harassing NVR and its officers by adding them as individual defendants in this matter is entirely unjustified.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion to Amend the

Complaint in its entirety.

Dated: June 16, 2008

SEYFARTH SHAW LLP

  /s Barry J. Miller___
Richard L. Alfred
Barry J. Miller
Two Seaport Lane, Suite 300
Boston, MA 02210
(617) 946-4800
ralfred@seyfarth.com

Lorie E. Almon
Devjani Mishra
620 Eighth Avenue
New York, New York 10018
(212) 218-5500
dmishra@seyfarth.com
*Attorneys for Defendant NVR, Inc.*

WOODS OVIATT GILMAN LLP
William G. Bauer
700 Crossroads Bldg., 2 State Street
Rochester, NY 14614
wbauer@woodsoviatt.com
*Local counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2008, I electronically filed the foregoing Memorandum
of Law with the Clerk of the District Court using the CM/ECF system, which sent notification of
such filing to the following counsel of record for Plaintiff:

J. Nelson Thomas
Dolin, Thomas & Solomon LLP
693 East Avenue
Rochester, New York 14607
(585)272-0540
nthomas@theemploymentattorneys.com

By: s/ Barry J. Miller_____
Barry J. Miller