UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK TRACY, et al., on behalf of themselves
and all other employees similarly situated,

                                        Plaintiff,

                                                                    DECISION AND ORDER

                                                                    04-CV-6541L

                v.

NVR, INC.,

                                        Defendant.
_____

     Defendant Ryan Homes ("NVR") is a home construction company with operations in upstate New York. Plaintiff Patrick Tracy ("Tracy") was employed by NVR from January 2000 until August 2005 as a Sales and Marketing Representative ("SMR"). His job duties included manning assigned stations upon tracts of land that NVR was developing into custom-built residential subdivisions. Such stations were generally located in model homes situated within a subdivision. Operating from these stations, Tracy visited with potential customers who came to make inquiries, showed the model home, and attempted to initiate and/or finalize home purchases. Tracy also "pre-sold" houses, working from models in sold-out communities to sell land and houses on sites that had not yet been developed.

     Tracy claims that during his employment with NVR, he regularly worked more than forty hours per week, for which he was not paid overtime at the statutory rate.

On or about October 29, 2004, Tracy commenced the instant action against NVR on behalf of himself and all other similarly situated NVR employees, alleging that NVR misclassified his position as exempt, and failed to pay him overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq., and New York Labor Law. Discovery is now completed and Tracy has moved for summary judgment (Dkt. #269), arguing that NVR cannot refute his claims of unpaid overtime. For the reasons that follow, that motion is denied.

## Discussion

### A.     Standard of Review on a Motion for Summary Judgment

It is well settled that a motion for summary judgment should be granted only where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. Proc. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When ruling on a motion for summary judgment, the court must construe the alleged facts in the light most favorable to the nonmovant. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party bears the ultimate burden of proof, it is his or her responsibility to confront the motion for summary judgment with evidence in admissible form. *Anderson*, 477 U.S. at 256.

B.     **Tracy's Claims**

The FLSA requires compensation at one and a half time the regular rate when an employer requires the employee to work more than forty hours per week. *See* 29 U.S.C. §207(a)(2). To establish an FLSA claim or a parallel claim under the New York Labor Law, plaintiff must prove that: (1) he was an employee who was eligible for overtime (i.e., that he was not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated. *See Barry v. Town of Elma*, 2005 WL 711842 at *2 (W.D.N.Y. 2005).

The FLSA provides that its overtime requirements do not apply to outside salespersons, defined as any employee:

> (a)    who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or place of business in:
>    (1)    making sales within the meaning of section 3(k) of the Act; or
>    (2)    obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
> (b)     whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this section do not exceed twenty percent of the hours worked in the workweek by nonexempt employees of the employer: Provided, that the work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. 541.500.

NVR, which bears the burden of demonstrating that an FLSA exemption applies to Tracy, claims that Tracy's SMR position is exempt as an "outside sales" position. *See generally Arnold v. Ben Kanowsky, Ind.*, 361 U.S. 388, 392 (1960) (alleged exemptions are narrowly construed against the employer). The applicable regulations provide that sales made from the employer's place of business, satellite offices, or similar "fixed sites," are not outside sales, while "sales at

the customer's place of business" or "the customer's home" constitute sales "away from the employer's place of business."  29 C.F.R. §541.502.

Tracy, however, claims that he was employed as an inside salesperson, and was not "customarily and regularly" performing work away from NVR's place of business.  Tracy testified that his sales were – 100% of the time – conducted on NVR's property, on sales sites maintained by NVR for the purpose of selling land and custom home building services in NVR-owned residential developments.  Tracy avers that he did not visit customers at their homes or businesses, and never strayed from NVR's designated sales sites when making sales.

NVR relies on a number of Wage and Hour Opinion letters issued by the Department of Labor (the "DOL"), which have consistently and progressively concluded that salespersons operating from model homes are exempt as outside sales employees, where their duties require their frequent absence from the model home or comparable sales office.  *See Wage & Hour Op. Letter* FLSA 2007-1, 2007 WL 506574 (January 25, 2007); *Wage & Hour Op. Letter* FLSA 2007-2, 2007 WL 506575 (January 25, 2007); *Wage & Hour Op. Letter* FLSA 2007-4, 2007 WL 506577 (January 25, 2007).  Tracy contends that these opinions should be discarded as "unreliable" given their failure to address or distinguish the regulations' definition of "away from the employer's place of business" as "the customer's place of business or . . . a customer's home."  29 C.F.R. §541.502.

The DOL opinions first make the threshold finding that "the [model home] sales office is the employer's place of business, because it is a fixed site used as a 'headquarters' for making sales."  *Wage & Hour Op. Letter* FLSA 2007-1, 2007 WL 506574 at *3, *citing* 29 C.F.R. §541.502 ("any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business").  *See also*

2007 WL 506577 at *2 (resort from which timeshares are sold constitutes the employer's place of business). While NVR disputes this conclusion, it is consistent with 20 C.F.R. §541.502, and I find no reason to disturb it.[1] Thus, the dispositive issue becomes: first, at what point the length and quality of a salesperson's absences from a model home render them an "outside salesperson" for purposes of the FLSA, and second, whether the undisputed facts demonstrate that Tracy's absences reached that threshold.

Analysis of these issues cannot be performed without first recognizing that the parties' conflict has been engendered by the regulations themselves. For purposes of the outside sales exemption, the regulations define the employer's place of business as any "fixed" location or headquarters from which sales are made, regardless of whether the employer owns or rents that property (29 C.F.R. §541.502), at the same time defining places "away from the employer's place of business" as the homes or businesses of customers. As such, the regulations curiously fail to account for a third category of sales locations: places, such as the subdivision lots in NVR-managed residential developments that Tracy visited, which are clearly not the home or business

---

[1] "[A]n agency's interpretation of its own regulations is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted." *Long Island Care at Home, Ltd. v. Coke*, 127 S.Ct. 2339, 2349 (2007), *quoting Auer v. Robbins*, 519 U.S. 452, 461 (1997). The FLSA's exemptions are articulated in further detail in the regulations and interpretations of the Secretary of Labor. The regulations are to be given controlling weight unless found to be arbitrary, capricious, or contrary to the statute. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843-44 (1984). By contrast, agency opinion letters do not have the force and effect of law, are not binding on courts, and are not given *Chevron*-level deference. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Nonetheless, opinion letters may have the "power to persuade, if lacking power to control," as they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). "The weight [of the authority of an agency interpretation] in a particular case will depend upon the thoroughness evidenced in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade . . ." *Id*.

of a customer, and also do not meet the "headquarters" definition of the employer's place of business.

In order to resolve this question, the opinion letters generally assume that residential development lots outside a model home are not the "employer's place of business." One of the most recent addresses the issue in detail, by engaging in an analysis of whether "the employer retains a continuing business interest" in the property to be sold or rented, such as by retaining ownership or maintenance responsibilities over the property, and explicitly concludes that "the employer does not maintain a continuing interest in . . . subdivision lots once they are sold or in the other facilities in the subdivision, and thus these areas are not part of the employer's place of business [for purposes of determining the exempt status of salesmen operating out of model homes]." *Wage & Hour Op. Letter* FLSA 2007-4, 2007 WL 506577 at 2.

Although plaintiff ingeniously urges the Court to find that 29 C.F.R. §541.502's definition of the term "away from the employer's place of business" as the customer's home or business is mandatory and exclusive, thereby rendering every other conceivable sales location "the employer's place of business" by default, I find no practical basis, in the regulations or elsewhere, upon which to base such a conclusion, particularly in light of the regulations' provision of a more limited definition for the term, "employer's place of business." *Id*. In the absence of statutory authority to resolve the question of whether the regulations' characterization of non-employer, non-customer locations should be controlled by its definition of "employer's place of business," or its definition of "[places] away from the employer's place of business," the Court is compelled to accept the DOL's reasoning and its "continuing business interest" analysis, which expands upon, but does not conflict with, the definition of "outside sales" set forth by 29 C.F.R. §541.502.

Having found that there is no reason to reject the DOL's opinion letters as unreliable, the Court turns to the question of whether the opinion letters are sufficiently on point with the undisputed facts to support a grant of summary judgment here. The first of the more recent opinion letters addresses the scenario where a model home salesperson is "frequently" absent from the model home, at least one or two hours per day, twice a week, visiting lots within the sales site and taking customers to view homes under construction, and where all of the "indispensable components" of his sales efforts take place during those outside visits. *Wage & Hour Op. Letter* FLSA 2007-2, 2007 WL 506575 at *3 ("[i]t is the nature of the time spent outside the model home, rather than the amount of time, that drives our conclusion. *Virtually all of the indispensable components of the sales efforts are concentrated in the outside period*") (emphasis added). The second opinion letter concerns sales associates stationed in temporary sales office trailers away from the development, and who are "expected to travel outside the sales office to meet with independent realtors," explore communities, "shop[] the competition," attend sales training programs, and inspect model homes, such that in a typical week, the associates spend at approximately 50% of their time away from the sales office. *Wage & Hour Op. Letter* FLSA 2007-1, 2007 WL 506574 at *2. *See also Billingslea v. Brayson Homes, Inc.*, 2007 U.S. Dist. LEXIS 52566 at *10 (N.D. Ga. 2007). The third letter describes resort timeshare salespersons, and concludes that sales associates who conduct all of their sales in sales offices and elsewhere on the resort property are not outside salespersons, because the resort is owned, maintained, and staffed by the employer, exercising a "continuing business interest" in that property, and therefore the entire resort constitutes the employer's place of business. *Wage & Hour Op. Letter* FLSA 2007-4, 2007 WL 506577 at *2.

Assuming *arguendo* that the DOL opinion letters establish that NVR's "place of business" was limited to the model homes and other fixed, "home base" locations from which Tracy made sales, the salient facts are vigorously disputed, and summary judgment is inappropriate. Tracy contends that he left the model home only about twice per month (and some months, not at all) to visit lots within a development for twenty minutes or less, and that the overwhelming majority of his customer contacts, and 100% of the indispensable components of his sales efforts, took place exclusively within the model home.

NVR's submissions paint a far different picture. Tracy's supervisor and a coworker testify that Tracy regularly left the model home to demonstrate home sites to customers, an average of eight of nine times per week, for forty-five minutes each time (averaging 8.25 to 9.75 hours per week), in addition to travel time between different subdivision communities. Tracy also escorted customers through their homes under construction at least twice per week for 30-40 minutes each, attended preconstruction meetings with customers outside of the model for fifteen minutes twice monthly, spent at least two hours per week visiting other NVR subdivision communities and an additional four or five hours per week checking the placement and visibility of promotional signage and "shopping" the competition. He also left the model home on a regular basis to meet with realtors. NVR alleges that these significant absences from the model home, and performance of such duties outside the model home context, were expected, encouraged and even required by NVR which regularly re-stationed other salespersons and at times "double-staffed" model homes in order to accommodate the frequent absences of each of its salespersons.

Manifestly, the parties have offered nearly diametrically opposed descriptions of NVR's expectations and Tracy's sales activities in and away from the model homes to which he was

assigned. These contested facts are central to the determination of whether Tracy was "customarily and regularly engaged" outside of NVR's place of business, and present a material question of fact as to whether the "outside sales" exception applies to him, and to those similarly situated. As such, resolution of Tracy's status as an exempt or nonexempt employee on his motion for summary judgment would be inappropriate, and that motion must be denied.

## CONCLUSION

For the foregoing reasons, Tracy's motion for summary judgment finding that NVR misclassified his sales position as exempt (Dkt. #269) is denied, without prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 23, 2009.