UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PATRICK TRACY, on behalf of himself and
all other employees similarly situated, et al.,           REPORT & RECOMMENDATION
                                                    and DECISION & ORDER
                            Plaintiffs,
                                                    04-CV-6541L

          v.

NVR, INC.,

                            Defendant.
_____


**PRELIMINARY STATEMENT**

        Plaintiff Patrick Tracy ("Tracy"), a former employee of defendant NVR, Inc. ("NVR"), has filed this collective action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law alleging that NVR failed to compensate him and other similarly-situated employees at the required rate for overtime work. (Docket # 80). By order dated January 5, 2007, the above-captioned matter was referred to the undersigned for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). (Docket # 10). Currently pending before this Court are three motions by Tracy. The first seeks leave to amend the complaint to join three additional defendants. (Docket # 336). The second seeks an order striking several of NVR's affirmative defenses. (Docket # 347). The third seeks a preclusion order. (Docket # 376). Each is addressed in turn below.

## FACTUAL BACKGROUND

Tracy was a Sales and Marketing Representative ("SMR") employed by NVR from 2000 to 2005. (Docket # 394 at 1). He alleges that during his employment with NVR, he was improperly classified as an exempt employee under the FLSA, and thus unlawfully denied payment for overtime hours he worked. (*Id.* at 1-2). NVR is a public corporation engaged in the home construction business. (Docket # 338-2, Exhibit ("Ex.") B at 1). Headquartered in Reston, Virginia, NVR conducts business in twenty-two metropolitan areas in twelve states, and in 2007 generated $5 billion in revenue. (*Id.* at 1-2).

Since 2007, approximately 150 current and former SMRs have joined the lawsuit as party plaintiffs. In late 2007, Tracy moved for summary judgment on his individual claims. (Docket # 269). Pursuant to the terms of an agreed-upon scheduling order, the parties proceeded first to conduct discovery on Tracy's claims, with discovery on the claims of the other plaintiffs to occur thereafter. (Docket # 291). Following discovery on Tracy's claims, United States District Judge David G. Larimer denied Tracy's summary judgment motion.[1] (Docket # 394).

## REPORT & RECOMMENDATION

### I. Motion to Amend the Complaint

Tracy has moved to amend his complaint to add three individual NVR corporate officers as defendants. (Docket # 336). Specifically, Tracy seeks to add NVR's Chairman of the Board, Dwight Schar ("Schar"), NVR's President and Chief Executive Officer, Paul C. Saville

---

[1] In 2006, the parties settled the claims of a group of employees classified as Sales and Marketing Associates. (Docket # 345 at ¶¶ 10-11).

("Saville"), and its Vice President of Human Resources, Joseph Madigan ("Madigan"). (Docket # 338-2, Ex. A at ¶¶ 17, 37, 60). Tracy seeks to establish liability against Schar, Saville and Madigan as employers under the FLSA in order to "protect [the plaintiffs'] future monetary compensation for unpaid overtime in the event NVR . . . defaults on payments, claims financial hardship, or files for bankruptcy protection." (Docket # 344 at 8).

NVR opposes the amendment as futile because the complaint "attributes no specific conduct to any of the three individuals. . . , [and] instead rel[ies] exclusively on their status as officers of NVR." (Docket # 342 at 1). NVR further contends that the amendment would prejudice NVR by requiring additional discovery. (*Id*. at 16-19).

### A. Legal Standards

Rule 15(a) provides that once the time for amending a pleading as of right has expired, a party may request leave of the court to amend, which shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, under Rule 15, if the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *See United States ex rel. Maritime Admin. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).[2]

If the amendment proposed by the moving party is futile, however, "it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (*per curiam*). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). To avoid dismissal, the proposed amended claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, the complaint "must allege facts that are not merely consistent with the conclusion that the defendant violated

---

[2] Where a party seeks to amend a complaint to add defendants, a court also must consider Rule 20(a) of the Federal Rules of Civil Procedure. Rule 20(a) permits the inclusion of additional defendants if "any right to relief is asserted against them jointly [or] severally . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Courts have interpreted the requirements of Rule 20(a) liberally so as to promote judicial economy and to allow related claims to be tried within a single proceeding. *See*, *e.g.*, *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1127 (2d Cir.) (Rule 20 "specifically vests in the district court the discretionary power to make such orders as may be required to prevent delay or prejudice"), *cert. denied*, 400 U.S. 878 (1970); *Liegey v. Ellen Figg, Inc.*, 2003 WL 21361724, *3 (S.D.N.Y. 2003) ("requirements of Rule 20(a) should be interpreted liberally"); *Kovian v. Fulton County Nat'l Bank and Trust Co.*, 1990 WL 36809, *9 (N.D.N.Y. 1990) ("there is no rigid rule as to what constitutes the same series of transactions or occurrences"); *City of New York v. Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 549 (E.D.N.Y. 1987) (requirements of Rule 20 are to be "liberally interpreted") (citations omitted).

NVR does not oppose Tracy's proposed amendment on Rule 20 grounds. Nor do I find that Rule 20 would provide an independent basis on which to deny Tracy's motion.

[3] In *Ashcroft v. Iqbal*, the Supreme Court amplified the meaning of its recent decision in *Bell Atlantic v. Twombly*, which rejected the earlier "no set of facts" standard of *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957), for dismissal under Fed. R. Civ. P. 12(b)(6). The parties filed their submissions on this pending motion after *Twombly*, but before *Iqbal* was decided.

the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557-58).

The Supreme Court has counseled district courts to employ a two-step analysis in evaluating the sufficiency of a proposed amended claim. *Ashcroft v. Iqbal*, 129 S. Ct. at 1950. First, the court must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Thus, the court should accept as true any well-pleaded factual allegations, but reject legal conclusions unsupported by facts. *Id*. Next, the court should "determine whether [the well-pleaded factual allegations] plausibly give rise to an entitlement to relief." *Id*. In doing so, the court is permitted to "draw on its judicial experience and common sense." *Id*.

Utilizing this framework, courts have dismissed complaints containing no factual allegations, but only legal conclusions tracking the language of a statute. *See*, *e.g.*, *Inst. for the Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 2009 WL 2850230, *3-4 (S.D.N.Y. 2009) (dismissing cause of action that contained only "conclusory assertions [, but] . . . no factual allegations," and rather "simply restated the [statutory] language"); *Willey v. J.P. Morgan Chase, N.A.*, 2009 WL 1938987, *4 (S.D.N.Y. 2009) (dismissing complaint that contained only "formulaic recitations" of the elements of the claim, unsupported by factual allegations; "*ipse dixit* pleading is insufficient" under *Iqbal*); *Kregler v. City of New York*, 2009 WL 2524628, *5 (S.D.N.Y. 2009) (dismissing amended complaint under *Iqbal* because its allegations amounted to only "conclusory pleadings").

## B. Individual Liability Under the FLSA

The critical question in evaluating the sufficiency of Tracy's proposed amended complaint is whether it alleges facts plausibly suggesting that proposed defendants Schar, Saville and Madigan meet the definition of "employer" under the FLSA. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[4] The provisions of the FLSA, including its definition of "employer," are to be interpreted liberally to effectuate the Act's remedial purposes. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Thus, individual defendants, such as corporate officers, owners or shareholders, have been held to be employers under FLSA. *See*, *e.g.*, *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d at 141; *Jiao v. Shi Ya Chen*, 2007 WL 4944767 at *11; *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 193 (S.D.N.Y. 2003).

The Second Circuit has explained that in determining whether an individual qualifies as an employer under the Act, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman*, 172 F.3d at 139 (internal citations omitted). The "economic realities test" considers four relevant factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained

---

[4] Where, as here, a plaintiff alleges violations of both the FLSA and the New York Labor Law, "courts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Jiao v. Shi Ya Chen*, 2007 WL 4944767, *9 n.12 (S.D.N.Y. 2007) (citing N.Y. Lab. Law § 2(6) and collecting cases). Accordingly, this Court's analysis will encompass whether Tracy's complaint has plausibly alleged that Schar, Saville and Madigan are employers under both the FLSA and the New York Labor Law.

6

employment records." *Id*. (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984)). Although each factor is probative of the putative employer's control over an employee, none is dispositive. *Id.* (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988)). Nor are the factors exclusive "[s]ince economic reality is determined based upon *all* the circumstances." *Id.* (emphasis in original).

Summarizing the *Herman* approach to employer liability under the FLSA, one court has framed the pivotal issue as whether the individual has "operational control" over the business. *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d at 192 ("[o]fficers and owners of corporations may be deemed employers under the FLSA 'where the individual has overall *operational control* of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions'") (quoting *Lopez v. Silverman*, 14 F. Supp. 2d 405, 412 (S.D.N.Y. 1998)) (emphasis added); *see also Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) ("[t]he overwhelming weight of authority is that a corporate officer with *operational control* of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages") (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)) (emphasis added). Such operational control, however, need not be "absolute." *Herman*, 172 F.3d at 139 ("[c]ontrol may be restricted, or exercised only occasionally" and "does not require continuous monitoring of employees, looking over their shoulders at all times").

Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedule or tasks,

7

signing the employee's paycheck or directly hiring the employee. *See*, *e.g.*, *Herman*, 172 F.3d at 140 (chairman of board of closely-held corporation was liable as employer because he hired managerial staff, occasionally "supervised and controlled employee work schedules and the conditions of employment," and signed payroll checks); *Ansoumana*, 255 F. Supp. 2d at 193 (individual defendants who were founders, owners and sole shareholders of closely-held delivery corporations were liable as employers because they together "personally over[saw] and operate[d] the companies and their [plaintiff] agents on a daily basis"); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 227 (S.D.N.Y. 2002) (individual defendants, who were shareholders in and members of board of directors of closely-held restaurant corporation were employers because they had "hands-on" contact with the plaintiff employees, were involved in their hiring and firing, supervision and compensation); *Kaur v. Royal Arcadia Palace, Inc.*, 2007 WL 4591250, *13 (E.D.N.Y. 2007) (plaintiffs demonstrated issue of fact as to whether owners of closely-held restaurant corporation were employers because they instructed employees from time-to-time and discussed and supervised employees' pay); *Jiao*, 2007 WL 4944767 at *10 (president of small hotel corporation was liable where she "hired [plaintiff], informed him of his pay rate, paid him, [] set his schedule," and supervised and determined plaintiff's responsibilities). Where the relationship between the putative employer and the plaintiff employee is more attenuated and the size of the corporation larger, employer liability may not be found. *See Bravo v. Eastpoint Int'l, Inc.*, 2001 WL 314622, *2 (S.D.N.Y. 2001) (dismissing complaint against clothing designer Donna Karan individually because plaintiffs had alleged no facts establishing individual defendant's "power to control the plaintiff workers").

C.  **Analysis of Tracy's Pleadings**

As the Supreme Court directed in *Iqbal*, the first task is to determine whether the proposed amended complaint contains "well-pleaded factual allegations" as opposed to "mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949, 1950.  In this case, the skill with which the proposed complaint has been drafted makes it especially difficult to distinguish between factual allegations and legal conclusions.  Indeed, that challenge illustrates the Supreme Court's admonition not "to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (quoting *Twombly* 550 U.S. at 555).

With respect to the three putative individual defendants, Tracy has alleged the position that each held within NVR (Docket # 338-2, Ex. A at ¶¶ 17, 37, 60), that each "has knowledge concerning the FLSA exempt classification of the plaintiff class and that the classification is disputed in litigation" and that each "continues the policy of classifying those employees as exempt" (*id.* at ¶¶ 35, 58, 84).  Judged under *Iqbal*, these allegations, standing alone, appear to be too conclusory to accept as true.  *Iqbal*, 129 S. Ct. at 1951 (allegation that defendants "knew of, condoned and willfully and maliciously agreed to subject [plaintiff] to harsh conditions of confinement as a matter of policy, solely on account of his religion, race and/or national origin and for no legitimate penological interest" is "conclusory" and "not entitled to be assumed true") (internal quotations omitted).

The harder question is whether the remainder of Tracy's allegations are sufficiently non-conclusory to justify accepting as true.  In sum, I read the remainder of the allegations against Schar and Saville to assert the following:  by virtue of his position within

9

NVR,[5] each (1) must have been "involved in the creation and/or maintenance of the illegal policy complained of in this case"; must have "actively advise[d] defendants' agents on the enforcement of the illegal policies"; and must have "actively ensure[d] defendants' compliance or non-compliance with . . . the FLSA" (Docket # 338-2, Ex. A at ¶¶ 21-23, 41-43); and (2) must have had the authority to make human resources policy decisions, to make decisions concerning recordkeeping, to make decisions concerning training and education "across NVR" and to make decisions concerning "payroll functions" (*id.* at ¶¶ 25-28, 44-50). These assertions are then supplemented by the recital of several allegations stating that "*because* [each] *has the authority to*" perform the actions described in the "economic realities" test set forth in *Herman*, then each did so.[6] (*Id.* at ¶¶ 29-33, 52-56) (emphasis added).

        These allegations add little to the analysis. No facts are alleged to support the assertion that either Schar or Saville actually performed the functions outlined in *Herman*. Indeed, there is no allegation that Schar or Saville ever hired, fired or supervised "the workers in question." *See Herman*, 172 F.3d at 139. Nor is there any factual allegation that they determined their rate or method of pay or maintained their employment records. *See id.* Rather, the sole factual support for the allegations tracking the *Herman* factors appears to be the fact that Schar and Saville held the position of Chairman and President, respectively. In other words, upon careful analysis, the complaint asserts little more than because Schar was Chairman and Saville was President of NVR, then each must have had authority to take the actions that comprise the

---

[5] Specifically, the allegations begin, "[u]pon information and belief, due in part to his role as [Chairman of the Board, or President and Chief Executive Officer]." (*See* Docket # 338-2, Ex. A at ¶¶ 21-23, 25-28, 39-51).

[6] Indeed, the allegation concerning the first *Herman* factor is tautological. It states that because the individual defendant "ha[d] the authority to hire and fire employees," then he "ha[d] the power to hire and fire employees." (*Id.* at ¶¶ 29, 52).

10

"economic realities" test, and that because each had the authority to take those actions, then each must have in fact taken those actions. To accept the adequacy of these allegations would license suit under the FLSA against every high level officer and board member of large public companies simply because of the position the individual holds. Although the definition of employer under the FLSA is indeed broad, I do not believe that it is this broad or unbounded by the requirements recently enunciated in *Iqbal* and *Twombly*.

As in *Iqbal*, I find that the allegations against Schar and Saville are not entitled to the presumption of truth – not because they are fantastical – but because they are conclusory. In *Iqbal*, the Supreme Court affirmed the dismissal of claims against former United States Attorney General John Ashcroft that he was the "principal architect" of a policy challenged in the lawsuit and that former Director of the Federal Bureau of Investigation Robert Mueller was "instrumental in adopting and executing it." *Iqbal*, 129 S. Ct. at 1951. As the Court reasoned, "[i]t is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.*

In short, I find that the only well-pleaded factual assertion against Schar and Saville is that he was Chairman and President, respectively, of NVR. Even if the assertions were accepted as true that each had knowledge that the classification of SMRs was disputed in this litigation, such knowledge does not transform Tracy's claim that Schar and Saville were "employers" under the FLSA from "conceivable" to "plausible." *See Iqbal*, 129 S. Ct. at 1950-51 ("we conclude that respondent's complaint has not nudged his claims . . . 'across the line from conceivable to plausible'") (quoting *Twombly*, 550 U.S. at 570). The fact that high-level officers and board members may know that litigation raising a challenge to an FLSA

11

classification of employees exists does not lead to the logical inference that they had operational control over that group of employees, particularly where the complaint fails to allege when the individuals gained that knowledge.[7] Accordingly, I recommend denial of Tracy's motion to amend the complaint to add Schar and Saville as individual defendants.

I reach a different conclusion, however, with respect to the adequacy of the allegations against Joseph Madigan, NVR's Vice President of Human Resources. Tracy has alleged Madigan's involvement with the activities identified in *Herman* more directly than he has with respect to Schar and Saville. Significantly, Tracy has asserted that Madigan made decisions concerning employees' schedules, hours and standard benefit levels. (*Id.* at ¶ 68). Moreover, these assertions, while permissibly based "[u]pon information and belief,"[8] are not evidently premised upon assumptions derived solely from his position he held within the company.[9] Rather, they are alleged as straightforward factual matters.

---

[7] The allegation of knowledge is presumably based upon NVR's 2007 annual report, signed by Schar and Saville, which Tracy cites in his motion papers. (*See* Docket # 337 at 7). Even if it were permissible to consider the annual report in assessing the adequacy of the proposed amendment, *see, e.g., Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994) (court is limited to consideration of factual allegations in complaint and documents incorporated by reference therein); *Sengillo v. Valeo Elec. Sys., Inc.*, 536 F. Supp. 2d 310, 312 (W.D.N.Y. 2008) (same), it simply shows that in 2007, three years after this lawsuit was filed, Schar and Saville had general knowledge of the FLSA litigation and believed that the challenged classification was lawful. Nor does the 1993 memorandum about telephone etiquette, on which Tracy also relies (Docket # 337 at 8), add substantively to the analysis. The memorandum, on which Schar was copied, was written eleven years before the litigation was filed and before Schar became Chairman, and is simply too attenuated in relevance to infer from it that Schar had operational control over SMRs.

[8] Information and belief pleading is still permissible after *Twombly* when the facts asserted are peculiarly within the opposing party's knowledge. *Boykin v. KeyCorp.*, 521 F.3d 202, 215 (2d Cir. 2008) (Sotomayor, J.).

[9] Indeed, a review of an affidavit sworn to by Madigan that was submitted by NVR in connection with a previous motion (Docket # 98, Ex. 6), as well as NVR's Human Resources Policies and Procedures Memorandum concerning the "SMR Compensation Program" that was provided in discovery, suggests that the allegations pertaining to Madigan are based, at least in part, on these documents.

In sum, I find that Tracy's claim against Madigan contains some specific, non-conclusory allegations that must be presumed true, namely, that Madigan was involved in setting NVR's employees' schedules, hours and benefits. Those allegations – coupled with the reasonable inference that the individual admittedly in charge of NVR's human resources policies and procedures[10] would be involved in hiring, firing and disciplinary determinations of individual employees, as well as recordkeeping for all employees and pay and benefit decisions – plausibly states a claim for relief against Madigan. Accordingly, I recommend that the district court grant Tracy's motion to amend his complaint to add Madigan as an employer defendant to the FLSA and New York Labor Law causes of action.

## II. <u>Motion to Strike Affirmative Defenses</u>

### A. <u>Background</u>

In July 2007, NVR answered Tracy's second amended complaint and alleged sixteen "additional" defenses. (Docket # 139). Tracy now moves to strike nine of the sixteen – specifically, the second, third, fourth, fifth, sixth, seventh, twelfth, fourteenth and fifteenth[11] – on the grounds that they fail to satisfy the pleading standard under Rule 8 of the Federal Rules of Civil Procedure and are factually baseless.[12] (Docket # 347). Respectively, the defenses at issue

---

[10] The proposed amended complaint states that NVR has admitted that Madigan's responsibilities include "actively managing NVR's human resources policies." (*Id.* at ¶ 61).

[11] Tracy initially moved to strike the tenth affirmative defense, but later withdrew his motion as it pertained to that defense. (Docket ## 347, 356 at 2 n.1).

[12] Tracy argues that these defenses should be determined to be baseless because NVR failed to respond substantively to his interrogatory seeking the factual bases for these defenses. (Docket # 348 at 3). Based upon my familiarity with the various discovery motions in this case, I am not persuaded that Tracy challenged defendants' objections to that interrogatory with sufficient clarity to warrant consideration of preclusion as a discovery sanction.

13

are: statute of limitations, laches, estoppel, unclean hands, waiver, acquiescence, and unsuitability of this action as a class action (the twelfth, fourteenth and fifteenth additional defenses). (Docket # 139 at 11-13).

### B. Applicable Legal Standard

Rule 8(c) of the Federal Rules of Civil Procedure governs the pleading of affirmative defenses. "Affirmative defenses are...subject to the general pleading requirements of Rules 8(a) [and] 8(e) . . . , generally requiring only a short and plain statement of the facts." *Saratoga Harness Racing, Inc. v. Veneglia*, 1997 WL 135946, *6 (N.D.N.Y. 1997) (quoting *Instituto Nacional De Comercializacion Agricola v. Continental Illinois Nat'l Bank & Trust Co.*, 576 F. Supp. 985, 988 (N.D. Ill. 1983)). Under Rule 12(f), a court may, on its own or on a motion filed within twenty days of the service of a responsive pleading, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A party's failure to move to strike within the twenty-day period is generally not a basis for denial of the motion. *See*, *e.g.*, *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 458 (E.D.N.Y. 2007); *Cattaraugus County Project Head Start v. Executive Risk Indem., Inc.*, 2000 WL 1737943, *1 (W.D.N.Y. 2000) (citing *Saratoga Harness Racing Inc. v. Veneglia*, 1997 WL 135946 at *4).

Although motions to strike affirmative defenses are "generally disfavored," *Barber v. RLI Ins. Co.*, 2008 WL 5423106, *5 (N.D.N.Y. 2008) (citing *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*, 2008 WL 1910503, *4 (S.D.N.Y. 2008)), affirmative defenses that contain only "bald assertions" unaccompanied by supporting facts will be stricken. *Schecter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996) (striking

14

affirmative defense; noting that affirmative "defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy"). Indeed, the *Twombly* plausibility standard applies with equal force to a motion to strike an affirmative defense under Rule 12(f). *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008).[13] *See also FSP, Inc. v. Societe Generale*, 2005 WL 475986, *8 (S.D.N.Y. 2005) ("[a] motion to strike an affirmative defense, pursuant to Fed. R. Civ. P. 12(f), is also governed by the same standard applicable to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)"); *Solvent Chem. Co. v. E.I. Dupont De Nemours & Co.*, 242 F. Supp. 2d 196, 212 (W.D.N.Y. 2002) ("[t]he standard for striking an affirmative defense is the mirror image of the standard for considering whether to dismiss for failure to state a claim").

C. **Analysis**

NVR has pled its contested "additional defenses" in simple conclusory terms, unsupported by any factual allegations. For example, NVR's third affirmative defense states in its entirety, "Plaintiffs' claims are barred by the doctrine of laches." (Docket # 139 at 11). NVR's second, fourth, fifth, sixth and seventh defenses of statute of limitations bar, estoppel, unclean hands, waiver and acquiescence, respectively, are stated in a similarly conclusory fashion. (Docket # 139 at 11-12). These affirmative defenses are plainly deficient under the

---

[13] Cases from other districts reaching the same conclusion include: *Sun Microsystems, Inc. v. Versata Enter., Inc.*, 630 F. Supp. 2d 395, 404 (D. Del. 2009) (applying *Twombly* standard to strike affirmative defenses and granting leave to defendant to replead); *Greenheck Fan Corp. v. Loren Cook Co.*, 2008 WL 4443805, *1-2, *report and recommendation adopted by* 2008 WL 4756484 (W.D. Wis. 2008) (same); *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 2008 WL 4391396, *1-2 (W.D. Tex. 2008) (same); *United States v. Quadrini*, 2007 WL 4303213, *4-6 (E.D. Mich. 2007) (same); *Home Mgmt. Solutions, Inc., v. Prescient, Inc.*, 2007 WL 2412834, *3 (S.D. Fla. 2007) (same).

*Iqbal* standard and should be stricken.[14] Because NVR maintains that it has a factual basis for at least some of the affirmative defenses, NVR should be granted leave to replead to test that assertion.

# DECISION & ORDER

## Motion to Preclude Evidence

Finally, also pending before this Court is a motion by Tracy to preclude the district court from considering an affidavit submitted by NVR in opposition to Tracy's summary judgment motion. (Docket # 376). By order dated October 10, 2008, United States District Judge David G. Larimer referred the motion to me. (Docket # 381).

Following the completion of discovery relating to Tracy's claims, NVR submitted its opposition papers to Tracy's summary judgment motion. NVR's submission included an affidavit sworn by Mark Aberi, who is Tracy's former supervisor. (Docket # 363-2, Ex. A). Tracy filed the pending motion to preclude the district court from considering Aberi's affidavit in determining the then-pending motion for summary judgment, arguing that NVR should be foreclosed from using Aberi as a witness because NVR had failed to identify him in its mandatory disclosures under Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure. (Docket # 376).

---

[14] The twelfth, fourteenth and fifteenth "additional defenses" are not affirmative defenses and thus are not subject to being stricken on this basis. *See* Fed. R. Civ. P. 8(c). Their merit, in any event, will be determined by the district court prior to trial. Should the case proceed to trial by a jury, the defenses should be redacted from any copy of the answer that is provided to the jury.

This Court conducted oral argument on the matter on November 19, 2008. (Docket # 390). During oral argument, counsel for Tracy confirmed on the record that the motion sought only to preclude the district court from considering Aberi's affidavit in connection with the summary judgment motion, and did not seek to preclude Aberi from testifying at trial. On February 23, 2009, Judge Larimer denied Tracy's summary judgment motion, rendering the pending motion moot.[15] (*See* Docket # 394 at 8-9). Accordingly, I deny Tracy's motion to preclude.

## CONCLUSION

For the reasons discussed above, I recommend that Tracy's motion to amend the complaint **(Docket # 336)** be **DENIED in PART and GRANTED in PART** and that Tracy's motion to strike NVR's second, third, fourth, fifth, sixth and seventh defenses **(Docket # 347)** be

---

[15] Apart from the mootness issue, preclusion is too harsh a remedy to justify on the record before the court. "Preclusion is a harsh sanction preserved for exceptional cases where a requested party's failure to provide the requested discovery results in prejudice to the requesting party." *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 235 (W.D.N.Y. 1998) (denying motion for sanctions because movant had not demonstrated prejudice caused by delay in discovery response) (citing *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988); *Softel, Inc. v. Dragon Med. and Scientific Commc'ns, Inc.*, 1990 WL 164859, *5-6 (S.D.N.Y. 1990)). A more appropriate remedy would have been to permit plaintiffs to depose Aberi and use his testimony, if helpful, in reply to defendants' opposition to the summary judgment motion. In any event, considering that discovery is currently proceeding on claims filed by plaintiffs other than Tracy, plaintiffs are free to depose Aberi should they wish to do so and if they have not already done so. Plaintiffs may then consider whether his testimony provides a basis for moving anew for summary judgment or seeking reconsideration of the district court's previous decision.

**GRANTED** with leave to replead.  Further, I order that Tracy's motion to preclude **(Docket # 376)** be **DENIED**.

**IT IS SO ORDERED.**

                                                                    _s/Marian W. Payson_
                                                                    MARIAN W. PAYSON
                                                                    United States Magistrate Judge

Dated: Rochester, New York
       September   30  , 2009

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(e) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

                                           *s/Marian W. Payson*
                                                   MARIAN W. PAYSON
                                                United States Magistrate Judge

Dated: Rochester, New York
        September   30  , 2009