UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICK TRACY,
*on behalf of himself and all other
employees similarly situated,*

*Plaintiffs,*

v.

NVR, INC.

*Defendant.*

Civil Action
04-CV-06541 DGL (P)

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL

THOMAS & SOLOMON LLP
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
(585) 272-0540

Of Counsel:   J. Nelson Thomas, Esq.
              Peter J. Glennon, Esq.
              Laura A. Myers, Esq.
              Jayme L. Feldman, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………….......ii

PRELIMINARY STATEMENT ……………………………………………………..….2

FACTS ……………………………………………………………………………………3

    *Background on Discovery* …………………………………………………………3

    *The Depositions of Defendant Witnesses* ……………………………………….....3

ARGUMENT ……………………………………………………………………………..5

    I.  PLAINTIFFS HAVE ESTABLISHED A PRELIMINARY SHOWING OF SPOLIATION BY DEFENDANT AND ITS COUNSEL AND ARE ENTITLED TO THE REQUESTED INFORMATION ……………………………………......5

        A.  The Evidence is Clear that Spoliation Occurred ……………………………7

        B.  Because of this Spoliation, Defendant's Litigation Hold Notices and Related Documents Regarding Preservation Efforts are Discoverable…….10

    II.  PLAINTIFFS ARE ENTITLED TO COSTS AND FEES FOR THIS MOTION …………………………………………………………………………11

CONCLUSION …………………………………………………………………………12

# TABLE OF AUTHORITIES

Cases

In re eBay Seller Antitrust Litig.,
   No. C 07-01882, 2007 WL 2852364 (N.D.Cal. Oct. 2, 2007) .......................................... 11

Keir v. Unumprovident Corp.,
   No. 02 Civ. 8781(DLC), 2003 WL 21997747 (S.D.N.Y. Aug. 22, 2003) ......................... 10

Laurey v. Chemung County Sheriff's Office,
   08-CV-6374L, 2011 WL 1581207 (W.D.N.Y. Apr. 26, 2011) .......................................... 12

Major Tours, Inc. v. Colorel,
   No. 05-3091 (JBS/JS), 2009 WL 2413631 (D.N.J. Aug. 4, 2009) .................................... 10

Masetta v. Town of Irondequoit,
   06-CV-6143T, 2011 WL 1542042 (W.D.N.Y. Apr. 22, 2011) .......................................... 12

United Med. Supply Co., Inc. v. U.S.,
   77 Fed. Cl. 257 (Fed. Cl. 2007) ......................................................................................... 10

West v. Goodyear Tire & Rubber Co.,
   167 F.3d 776 (2d Cir. 1999) ................................................................................................ 7

Zubulake v. UBS Warburg LLC,
   220 F.R.D. 212 (S.D.N.Y. 2003) ......................................................................................... 5

Zubulake v. UBS Warburg LLC,
   229 F.R.D. 422 (S.D.N.Y. 2004) ................................................................................ 6, 8, 10

Rules

Fed. R. Civ. P. 37(a)(5)(A) ...................................................................................................... 12

**PRELIMINARY STATEMENT**

Plaintiffs respectfully submit this memorandum of law in support of their Motion to Compel defendant NVR, Inc. ("defendant" or "NVR") to produce (i) its litigation hold notices; (ii) a list identifying the recipients of the litigation hold notices issued in this matter; (iii) related communications regarding preservation efforts by defendant in this litigation; and (iv) costs and fees associated with having to bring this motion. Because the evidence demonstrates that defendant and its counsel spoliated evidence and did not abide by their respective preservation and monitoring obligations, plaintiffs have established the right to receive the requested information.

As set forth below, only one of the six recently deposed NVR managers received a litigation hold notice and that manager nonetheless proceeded to spoliate evidence probative to plaintiffs' claims. As a result of this widespread preservation failure, plaintiffs have established the requisite preliminary showing of spoliation and the requested documents are consequently discoverable.

Although the evidence clearly establishes plaintiffs' right to the requested information, defendant nevertheless has refused to produce the information absent a Court Order. *See* Affirmation of Peter J. Glennon, sworn to June 3, 2011 ("Glennon Aff."), Exhibit ("Exh.") H [May 18, 2011 letter to Barry Miller from Peter J. Glennon]; Trans. May 27, 2011 Court Conference Docket Number ("Dkt. No.") 577 at 9.

2

# FACTS

*Background on Discovery*

This matter was commenced on October 29, 2004.  (Docket Number "Dkt. No." 1). Discovery for the instant matter was generally deemed closed on October 30, 2010 (July 1, 2010 Order, Dkt. No. 489), except for the limited discovery that was elicited by plaintiffs from outstanding defendant deponents.  *See* Trans. June 23, 2010 Hearing (Dkt. No. 490), at 85.  On March 10, 2011, after a flurry of motion practice, this Court Ordered that plaintiffs were permitted to depose six NVR witnesses, which were to be noticed by March 14, 2011. (Dkt. No. 563).

*The Depositions of Defendant Witnesses*

Plaintiffs subsequently timely noticed for deposition current and former NVR employees division manager/vice president Paul Mock; former regional sales manager Doug Partington; former regional manager/vice president Mark D'Urso; former sales manager Michael Barrett; former sales manager David Wilcox; and current vice president for sales and marketing Michele Sobieski.[1]  These depositions were prosecuted between April 21, 2011 and May 18, 2011.

In prosecuting these depositions, plaintiffs were dismayed to discover that only one deponent, Paul Mock, had even received a litigation hold notice.  Glennon Aff., Exh. A [Deposition of Paul Mock, dated April 21, 2011 ("Mock Dep.")], 29:13-30:6.  Despite receiving a single notice in 2007 (three years after the commencement of this litigation), Mock, who was identified in defendant's supplemental disclosures, testified to freely

---

[1]    Notably, three of these deponents were actually former employees of defendant.  However, despite plaintiffs' request to be informed of each deponent's employment status at the time deposition notices were issued, defendant only initially disclosed that one deponent was a former employee of defendant.  *See* May 18, 2011 letter from Peter J. Glennon to the Court at 3-4.

destroying and discarding responsive and otherwise probative evidence between 2004 and present. Mock Dep. at 222:3-25; 223:17-227:3; 289:9-290:8; 339:25-340:24. Additionally concerning, the remaining five deponents never received litigation hold notices and were otherwise not informed of their duty to preserve relevant evidence. Glennon Aff., Exh. B [Deposition of Doug Partington, dated April 22, 2011 ("Partington Dep.")], 42:4-19; Glennon Aff., Exh. C [Deposition of Mark D'Urso, dated April 28, 2011 ("D'Urso Dep.")], 84:17-85:13; Glennon Aff., Exh. D [Deposition of Michael Barrett, dated May 3, 2011 ("Barrett Dep.")], 31:24-32:12; Glennon Aff., Exh. E [Deposition of David Wilcox, dated May 12, 2011 ("Wilcox Dep.")], 30:18-31:4; Glennon Aff., Exh. F [Deposition of Michele Sobieski, dated May 18, 2011 ("Sobieski Dep."], 59:7-60:7. Indeed, at least one deponent stated he was not even fully informed about this litigation until he was noticed for deposition. D'Urso Dep. at 89:16-20. Needless to say, all deponents testified to destroying relevant and probative evidence that should have been preserved. *See e.g.*, Mock Dep. at 222:13-25; Partington Dep. at 49:6-21; 183:15-184:9; D'Urso Dep. at 93:20-94:8; Barrett Dep. at: 34:19-35:9; 136:4-19; Wilcox Dep. at 71:14-72:3; Sobieski Dep. at 139:7-140:22; 141:12-144:4; 144:17-23; 144:24-145:24.

The nature and extent of the destroyed evidence is all encompassing. The testimony establishes that the spoliated evidence includes email among defendant employees, including Sales and Marketing Representatives ("SMRs") (Barrett Dep. at 34:19-35:9; Partington Dep. at 43:16-44:2; 45:3-7; D'Urso Dep. at 93:20-94:8; Wilcox Dep. at 34:20-35:10; Sobieski Dep. at 61:11-24; 63:3-8); evidence of SMR activities, including traffic and marketing reports (Mock Dep. at 222:13-25; Partington Dep. at 49:6-21; Wilcox Dep. at 71:14-72:3; Sobieski Dep. at 141:12-144:4; 144:17-23); and customer surveys and secret shopper evaluations

relating to SMRs (Mock Dep. at 289:9-290:8; Barrett Dep. at 136:4-19; Sobieski Dep. at 144:24-145:24).

Finally, the testimony establishes that NVR did not suspend its automatic document destruction policies or remind employees of their preservation obligations; nor was any monitoring of defendant's preservation efforts performed by defendant or its legal counsel. Mock Dep. at 29:13-30:2; 30:16-19; 52:9-10; 53:2-9; 226:9-227:3; Sobieski Dep. at 61:24-62:3.

Accordingly, plaintiffs are entitled to the requested information in order to, among other things, assess the scope of the damage and prejudice caused by defendant and its counsel.

## ARGUMENT

I. **PLAINTIFFS HAVE ESTABLISHED A PRELIMINARY SHOWING OF SPOLIATION BY DEFENDANT AND ITS COUNSEL AND ARE ENTITLED TO THE REQUESTED INFORMATION**

A party's duty to preserve evidence arises at the time litigation commences or at the time the party reasonably anticipates litigation. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). This litigation was commenced on October 29, 2004. Therefore, defendant and its counsel have had a continuing obligation to preserve documents since October 29, 2004, *at the latest*. A party is required to retain all relevant documents, including electronic documents, that exist at the time the duty to preserve arises. *Id.* at 218. The party also has an ongoing duty to preserve any relevant documents created after the duty to preserve attaches. *Id.*

Once a party's preservation obligations attach, it must cease its normal document retention and deletion policies and implement a "litigation hold" policy for the purposes of

5

the commenced (or reasonably anticipated litigation). *Id.* Once a litigation hold is instituted, a party's counsel has an ongoing obligation to monitor compliance with the litigation hold and ensure that relevant information is maintained and properly preserved. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004).

In order to ensure compliance, counsel should issue litigation hold notices instructing defendant's employees of their continuous preservation obligations. *Id.* at 433. These notices must be re-issued so that employees are constantly aware of their duties. *Id.* Additionally, counsel should be directly addressing and reminding those identified in defendant's initial and supplemental disclosures as to their duties. *Id.* Because "these 'key players' are the 'employees likely to have relevant information' it is particularly important that the preservation duty be communicated clearly to them." *Id.* at 433-34 (internal citations omitted). Further *all* employees must be instructed by counsel to produce relevant information and make sure any relevant backup information is properly preserved. *Id.* at 434.

Indeed, it is not sufficient for counsel to merely rest on faith that since litigation hold notices were issued, defendant's employees will heed counsel's instructions. Rather the "active supervision of counsel" is required. *Id.* at 433.

As a result of defendant and its counsel not properly abiding by their ongoing preservation obligations in the instant matter, spoliation has occurred. Because of this spoliation, plaintiffs are entitled to obtain defendant's litigation hold notices, a list identifying those that were issued litigation hold notices in this matter, and related documents regarding evidence preservation efforts.

A.     The Evidence is Clear that Spoliation Occurred

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). The recent deposition testimony makes apparent that spoliation has occurred in this matter.

Through defendant's employees' own deposition testimony, plaintiffs are able to establish that defendant and its employees have been destroying and discarding evidence far after this litigation was reasonably foreseeable or even pending. The recent deposition testimony also makes evident that defendant and its counsel did not abide by their respective preservation obligations.

Defendant and its counsel breached their obligatory duties resulting in spoliation of probative and relevant evidence. Initially, defendant's counsel failed to issue a litigation hold notice at the time this litigation was commenced (let alone was reasonably foreseeable) and failed to provide continuous instruction to defendant's employees. Mock Dep. at 29:13-30:6. A litigation hold notice should have been issued by October 29, 2004 at the very latest. This, however, did not occur. In fact, deponent Paul Mock, a division manager/vice president who was identified on defendant's January 29, 2010 supplemental disclosures (Glennon Aff., Exh. G [Defendant's January 29, 2010 Supplemental Disclosures]), received only *one* litigation hold notice ever and it was not received until 2007 – three years after the commencement of this action. *See* Mock Dep. at 29:13-30:6. Mr. Mock did not receive any oral warnings or notice of his preservation duties. Mock Dep. 30:16-19. Incredibly, Mock freely testified that he was only "vaguely" familiar with the instant litigation, and could not even recall if he was aware of this lawsuit prior to 2007. Mock Dep. at 18:6-9; 22:7-15. This

7

testimony shows an utter failure on behalf of defendant and its counsel to inform a "key player" of his preservation duties.[2] *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433-34 (S.D.N.Y. 2004).

Unfortunately, this failure directly resulted in the spoliation of probative evidence. Mock has absolutely no recollection of taking any action as a result of receiving the single, belated litigation hold notice. Mock Dep. at 32:25-34:25. Mock stated that he could not recall searching his emails, that he did not search his computer hard drive, nor did he search his paper files. Because Mock was painfully unaware of his preservation duties, he continued to employ his general practice of discarding and shredding numerous documents. *See* Mock Dep. at 48:8-21 (general practice of deleting emails); 49:12-21 (recalling that the oldest email in his inbox folder is a month old); 51:23-52:5 (deleting emails from sent folder); 54:25-55:3 (deleting emails from draft folder); 55:12-16 (deleting Microsoft Word files); 58:3-6 (deleting Microsoft Excel files); 64:3-12 (general practice of discarding and shredding paper files).[3] Moreover, Mock testified that he destroyed and discarded documents just one week before his deposition and even keeps a shredder in his office. *Id.* at 50:6-15 (recently deleted emails

---

[2] Mock is undoubtedly a "key player" as referenced in *Zubulake*. As Division Manager/Vice President of the Washington West Division, Mock has overseen approximately 156 SMRs during his time as Division Manager. See Mock Dep. at 156:18-22 (Mock supervises approximately 12 SMRs at a time in his division); 132:14-22 (Mock has been Division Manager from 1998 until the present). Further, and of particular import, Mock oversaw Kevin Tripler and JoLaine Savarino, two plaintiffs subject to discovery in this action and his position at NVR extended his involvement to the 2008 spoliation of Jessica McKnight's documents at the MTV office (a year after Mock received his litigation hold notice). Mock Dep. at 163:11-16; 164:9-15; 364:4-8.

Further, although all managers should have been issued a litigation hold notice, deponents Mark D'Urso (a former vice president/regional manager) and Michele Sobieski (a former regional manager and current vice president for sales and marketing for the Delaware Valley Operation) are also key players who did not receive a litigation hold notice. D'Urso Dep. at 84:17-85:13; 10:3-9; 12:16-18; Sobieski Dep. at 59:7-60:12; 11:17-22.

[3] Mock's general practice of deleting emails is increasingly troubling considering that he testified as to having an NVR email account since July 1, 2002. Mock Dep. at 349:10-12. Therefore, Mock has been sending, receiving, and deleting emails since the inception of this litigation.

8

a week before deposition); 52:9-15 (same) 53:10-13 (same); 65:11-19 (shredded paper files a week before deposition and shreds files potentially more than once a year); 65:4 (has shredder in office).[4]  Ultimately, Mock professed his policy of "[not] sav[ing] a whole lot." *Id.* at 56:3.

Of increased concern is the fact that these documents that have been discarded and shredded were of obvious import and relevance to plaintiffs.  Specifically, Mock testified to spoliating marketing plans, traffic reports, secret shopping reports, and customer surveys. Mock Dep. at 222:3-25 (discarding quarterly market plans); 223:17-227:3 (discarding traffic reports); 289:9-290:8 (shredding secret shopper evaluations); 338:8-340:24 (shredding customer surveys).  These documents are relevant to the daily performance and actual activities of SMRs.  *See e.g.*, Mock Dep. at 220:13-24; 223:20-224:11.

Unfortunately, defendant and its counsel's failures extend to more than just the spoliation by Mr. Mock.  Indeed, none of the remaining five manager deponents received a litigation hold notice.  *See* Partington Dep. at 42:4-19; D'Urso Dep. at 84:17-85:13; Barrett Dep. at 31:24-32:12; Wilcox Dep. 30:18-31:4; Sobieski Dep. at 59:7-60:7.  In fact, not only did these managers not receive litigation hold notices, but at least one of the deponents was not even aware of the litigation at all until his deposition was noticed in March 2011. D'Urso Dep. at 89:16-20.  Further, the testimony indicates that no documents were collected from these individuals.  *Id.* at 88:8-24; Sobieski Dep. at 60:4-12.  There is even testimony that emails from SMRs were deleted.  Barrett Dep. at 34:24-35:9.  Not only is Mock's testimony replete with proof of his spoliation, but every other recent deponent also testified

---

[4]  In addition to employees manually deleting documents, deponent testimony also elicits that defendant did not cease its ordinary retention and deletion policies and that documents are still being automatically deleted by the company.  Mock Dep. at 52:9-10; 53:2-9; Sobieski Dep. at 61:24-62:3.

9

to spoliating evidence. Partington Dep. at 43:16-44:2; 45:3-7; 45:16-20; 45:22-46:8; 49:6-21; 183:15-184:9; D'Urso Dep. at 93:20-94:8; Barrett Dep. at: 34:19-35:9; 128:22-129:5; 136:4-19; Wilcox Dep. at 34:20-35:10; 46:6-12; 71:14-72:3; Sobieski Dep. at 61:11-24; 63:3-8; 65:16-23; 139:19-140:22; 141:12-144:4; 144:17-23; 144:24-145:24.

The above evidence makes it unmistakably clear that defendant and its counsel failed to uphold its preservation obligations, and failed to abide by these obligations in a timely fashion. As a result of this widespread failure, an unknown amount of probative and relevant documents central to this litigation have been destroyed.

### B. Because of this Spoliation, Defendant's Litigation Hold Notices and Related Documents Regarding Preservation Efforts are Discoverable

As this Court is aware, although litigation hold notices and preservation efforts are usually protected by privilege, this information is discoverable once spoliation is established. *Major Tours, Inc. v. Colorel*, No. 05-3091 (JBS/JS), 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009). Indeed, numerous courts have allowed litigation hold notices and information regarding preservation efforts to be obtained by an opposing party once a preliminary showing of spoliation is made. *See Zubulake*, 229 F.R.D. at 425 n. 15-16 (counsel's preservation efforts and litigation hold communications were disclosed after a showing that emails had been deleted); *Keir v. Unumprovident Corp.*, No. 02 Civ. 8781(DLC), 2003 WL 21997747, at *10-11 (S.D.N.Y. Aug. 22, 2003) (requiring defendant to disclose preservation efforts and instructions given to employees after backup tapes were overwritten); *United Med. Supply Co., Inc. v. U.S.*, 77 Fed. Cl. 257, 262-63 (Fed. Cl. 2007) (ordering defendant to disclose litigation hold notices and to disclose preservation policies and efforts after it was shown that certain employees did not receive litigation hold notices, were not timely informed of litigation, and destroyed documents).

Notably, although litigation hold notices and information relating to preservation efforts are initially privileged, the identities of those receiving litigation hold notices are not generally privileged or otherwise protected by the work product doctrine. *See In re eBay Seller Antitrust Litig.*, No. C 07-01882, 2007 WL 2852364, at *1 (N.D.Cal. Oct. 2, 2007). Moreover, the *facts* surrounding preservation efforts and expected preservation efforts of those who received litigation hold notices are also not privileged. *Id.* at *2. This includes information and categories of information that employees were instructed to preserve and what actions were taken in furtherance of this instruction. *Id.*

Here, plaintiffs have provided extensive proof supporting their preliminary showing that spoliation has occurred. Plaintiffs have therefore met the requisite burden and the requested information becomes discoverable. Moreover, all information regarding the expected and actual preservation efforts by defendant and its counsel as well as the identities of those who received litigation hold notices, is not privileged information, and such discovery should also be produced. Therefore, plaintiffs request that the Court compel defendant to produce the requested information to which plaintiffs are entitled.

## II. PLAINTIFFS ARE ENTITLED TO COSTS AND FEES FOR THIS MOTION

The testimony is unambiguous. Defendant and its counsel consistently and continuously failed to abide by their respective preservation and monitoring obligations throughout this litigation. As a result of this failure, an unknown amount of probative evidence has been irretrievably lost. In light of the foregoing evidence, defendant should have voluntarily produced the requested information instead of insisting that this motion be made. Trans. May 27, 2011 Court Conference Docket Number ("Dkt. No. 577) at 9.

Consequently, plaintiffs are entitled to costs, including reasonable attorneys' fees, incurred in bringing this motion. *See* Fed. R. Civ. P. 37(a)(5)(A); *Laurey v. Chemung County Sheriff's Office,* 08-CV-6374L, 2011 WL 1581207, at *1 (W.D.N.Y. Apr. 26, 2011) (Payson, M.J.); *Masetta v. Town of Irondequoit*, 06-CV-6143T, 2011 WL 1542042 (W.D.N.Y. Apr. 22, 2011) (Payson, M.J.).

## CONCLUSION

Based on the foregoing, plaintiffs request that the Court grant their Motion to Compel in its entirety and to compel defendant to produce its litigation hold documents; a list of recipients to whom the litigation hold documents were issued in this matter; related documents regarding its preservation efforts; as well as the cost and fees incurred for bringing this motion.

Dated:  June 3, 2011

                              **THOMAS & SOLOMON LLP**

                              By:    s/ Peter J. Glennon
                                    J. Nelson Thomas, Esq.
                                    Peter J. Glennon, Esq.
                                    Laura A. Myers, Esq.
                                    Jayme L. Feldman, Esq.
                                    *Attorneys for Plaintiffs*
                                    693 East Avenue
                                    Rochester, New York 14607
                                    Telephone:  (585) 272-0540
                                    nthomas@theemploymentattorneys.com
                                    pglennon@theemploymentattorneys.com
                                    lmyers@theemploymentattorneys.com
                                    jfeldman@theemploymentattorneys.com