UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                       :

PATRICK TRACY,                          :
on behalf of himself and all other     :
employees similarly situated,        :
                                         :

                       Plaintiff,      :    No. 04-CV-06541 DGL(P)
                                         :

          - against -             :
                                         :

NVR, INC.,                             :
                                         :

                      Defendant.     :
                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NVR, INC.'S OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL LITIGATION HOLD INSTRUCTIONS

<u>Of Counsel:</u>
Lorie E. Almon
Richard L. Alfred (*pro hac vice*)
Barry J. Miller (*pro hac vice*)
Dana L. Fleming (*pro hac vice*)
James M. Hlawek (*pro hac vice*)

<u>Local Counsel:</u>
William G. Bauer

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
--------------------
Two Seaport Lane, Suite 300
Boston, MA 02210

WOODS, OVIATT, GILMAN, LLP
700 Crossroads Building, 2 State Street
Rochester, New York 14614

*Attorneys for Defendant NVR, Inc.*

Well after the close of an extended discovery period and based on a series of contrived assertions that ignore the proper scope of this litigation, Plaintiffs have filed another Motion to Compel (Dkt. 579), this time seeking privileged information pertaining to NVR's evidence preservation efforts.  Plaintiffs' Motion fails in part because it is based on distortions of the testimony that Plaintiffs errantly contend to reflect that NVR has not sufficiently preserved certain information.  More fundamentally, Plaintiffs' Motion fails because it is premised on a gross misconstruction of NVR's litigation hold obligations.  Plaintiffs essentially contend that NVR has not preserved every shred of information pertaining to every one of its Sales and Marketing Representatives ("SMRs") during the nearly seven years that this litigation has been pending.  What Plaintiffs' Motion fails to recognize is that this litigation does not concern every one of NVR's SMRs, but a tiny fraction of that population consisting almost entirely of individuals who left the Company's employ long ago.  Plaintiffs' Motion also relies on distortions of the roles in NVR's organization and in this litigation that are played by the somewhat random collection of individuals whom Plaintiffs have elected to depose.  At bottom, Plaintiffs have made no showing of spoliation of any relevant evidence, and as Plaintiffs acknowledge, under those circumstances, discovery directed at NVR's litigation hold efforts improperly seeks privileged information.  The Court should deny Plaintiffs' Motion in its entirety and allow the prolonged course of discovery in this action finally to conclude.

## FACTUAL BACKGROUND

**I.      Procedural History of the Litigation.**

Plaintiff Patrick Tracy commenced this litigation on October 29, 2004. (Dkt. 1).  From that date until January 19, 2007, Mr. Tracy was the only party plaintiff to this action.  As a result of certain solicitations by Plaintiffs' counsel, followed by a Court-approved notice and opt-in process, a total of approximately 155 individuals filed consents to join this action as parties plaintiff between

January and September 2007.[1]  This represented a small minority of the approximately 1,615 current

and former SMRs who received notice of the pendency of this action and an invitation to join the

case through the Court-approved process. *See* Declaration of Barry J. Miller, ¶¶ 3-7.  The vast

majority of those individuals had left their employment with NVR before joining the lawsuit; only

approximately 22 of the opt-in plaintiffs were employed by the Company at the time that they joined

the litigation.[2]  Declaration of Christopher Brader, ¶ 2.  Of the individuals who joined the lawsuit

while still working for NVR, most resigned within a period of a few months after joining the lawsuit.[3]

Brader Dec., ¶ 3.

Between July 2008 and January 2010, Plaintiffs deposed several current and former NVR

managers who had exercised supervisory responsibilities with respect to certain of the opt-in

plaintiffs who were participating in this action.[4]  In those proceedings, Plaintiffs' counsel asked the

witnesses no questions whatsoever about their preservation of documents or evidence pertaining to

this litigation, and their present Motion contains no citation to any testimony of those witnesses

(Thomas Delaney, Kent Eschleman and Mark Aberi).

---

[1] Plaintiffs' counsel's unauthorized efforts to solicit individuals to join this action were detailed in a motion that NVR filed in June 2007 (*See* Dkt. 125-134), which Judge Larimer addressed at a June 14, 2007 hearing in this matter (*See* Dkt. 136, pp. 5-8).

[2] Many of the opt-in plaintiffs had left their employment years before this litigation commenced in 2004.  Even with the benefit of an agreement between the parties that had tolled the statute of limitations for a period of more than two years, 20 of the opt-in plaintiffs were forced to drop out of the litigation because their claims were untimely.  (*See* Dkt. 416 - 436).

[3] One opt-in plaintiff remained employed for approximately 13 months after joining the lawsuit before leaving the Company's employ, and another opt-in plaintiff remained employed for approximately 17 months before leaving the Company's employ.  Brader Dec., ¶ 3.  A third opt-in plaintiff, Amber Wilcox, left the Company's employ less than two months after joining the litigation, rejoined the Company in late August 2009, and currently remains an employee.  *See id.*

[4] Plaintiffs deposed Division Manager Kent Eshleman on July 15, 2008; Regional Sales and Marketing Manager Thomas Delaney, Jr. on July 16, 2008; and former Sales Manager Mark Aberi on January 13, 2010.

After four extensions of the discovery period, discovery in this action closed for the first time on March 31, 2010.[5]  Thereafter, the parties filed cross-motions on a variety of discovery issues (*see* Dkt. 471-487), including a request by Plaintiffs to take additional depositions of unspecified individuals (*see* Dkt. 475, pp. 16-18).  In addressing those motions at a June 23, 2010 hearing (*see* Dkt. 488), the Court Ordered that all depositions were to be completed by October 30, 2010 (Dkt. 489).  During that fifth extension of the discovery period, Plaintiffs took a Rule 30(b)(6) deposition of NVR's corporate designee on September 16, 2010, but Plaintiffs did not take any other depositions or identify any other individuals whom they sought to depose.  As with their prior depositions of the NVR managers, Plaintiffs' counsel asked no questions relating to NVR's document preservation efforts of NVR's Rule 30(b)(6) representative, and their present Motion to Compel cites no testimony from that witness (Christopher Brader).

## II.    Plaintiffs' Selection and Examination of the Deposed Managers.

After the expiration of the fifth extension of the discovery period, Plaintiffs filed another motion seeking leave to take yet more depositions of NVR's witnesses (again without identifying whom they sought to depose).  (*See* Dkt. 529, pp. 7-12).  By Order dated March 10, 2011, the Court permitted Plaintiffs to take six additional depositions to be completed by May 13, 2011.  (Dkt. 563).  Only after this sixth extension of the discovery period did Plaintiffs disclose whom they sought to depose.  Their list consisted of Paul Mock (Division Manager); Doug Partington (former Regional Sales & Marketing Manager); Mark D'Urso (former Regional Manager); Michael Barrett (former

---

[5] When the active litigation of Plaintiffs' claims on behalf of Sales & Marketing Representatives commenced in January 2007, fact discovery was first scheduled to close on December 31, 2007 (Dkt. 116).  Fact discovery was extended through January 31, 2008 by Order dated December 13, 2007 (Dkt. 275).  Shortly thereafter, Plaintiffs moved to bifurcate discovery between Named Plaintiff Patrick Tracy's individual claims and discovery involving other members of the putative class (Dkt. 277).  The Court granted that motion in part and extended discovery regarding Plaintiff Tracy's claims through February 29, 2008 by Order dated January 1, 2009 (Dkt. 291).  The Court subsequently ruled that all fact discovery was to be completed by February 1, 2010 (Dkt. 400).  The Court then extended class discovery through March 31, 2010 by Order dated January 8, 2010 (Dkt. 470).

Sales Manager); David Wilcox (former Sales Manager); and Michele Sobieski (Vice President of

Sales & Marketing) (collectively, the "Deposed Managers").[6]

Rather than depose individuals who would be in the best position to provide evidence relevant

to the issues in this litigation, Plaintiffs elected to notice the depositions of a seemingly random

collection of current and former NVR managers, many of whom had never directly supervised any

participant in this action.[7]  Of the six individuals whom Plaintiffs chose to depose during the most

recent extension of the discovery period, only three (Messrs. Partington, Barrett and Wilcox) had

served as Sales Managers exercising direct supervisory authority over any of the opt-in plaintiffs.  Of

those, Mr. Partington directly supervised two opt-in plaintiffs for less than two years each.  Brader

Dec., ¶ 4.  He last supervised a participant in this litigation in January 2003, when he was promoted

to Regional Sales & Marketing Manager.  Brader Dec., ¶ 5.  Mr. Barrett supervised three opt-in

plaintiffs for less than fourteen months each.  Brader Dec., ¶ 6.  He last supervised a participant in

this litigation in September 2006, when he left the Company.[8]  Brader Dec., ¶ 7; Barrett Dep. 125:9.

Mr. Wilcox supervised three opt-in plaintiffs, two of whom he supervised for less than seven months

each, and one of whom he supervised for approximately fourteen months.  Brader Dec., ¶ 8.  He last

supervised a participant in this action on or about October 31, 2006, after the last of the three opt-in

plaintiffs left NVR's employ.  *See id.*

---

[6] Plaintiffs contend that NVR failed to disclose that three of the six deponents were no longer employed by the Company prior to their depositions.  This claim is premised on a distortion of the record.  In making arrangements for one of the depositions to take place out of state, counsel for NVR noted in an email to Plaintiffs' counsel that the witness, Mr. D'Urso, no longer worked for the Company (hence his request to be deposed in his home state of Ohio rather than New York).  *See* Miller Dec., Exhibit A.  NVR made no representation as to the employment status of any of the other witnesses, who were all scheduled to be deposed in Rochester, New York.  Miller Dec., ¶ 10

[7] Paul Mock is the only Deposed Manager listed on NVR's Rule 26(a) disclosures as someone who may reasonably be expected to have discoverable information pertaining to Plaintiffs' claims.  Miller Dec., ¶ 12.

[8] Mr. Barrett was rehired by NVR on July 30, 2009 as an SMR, which is his current position.  Barrett Dep. 125:6-9; 128:5-11.

The three remaining Deposed Managers had no direct supervisory relationships at any time with any of the individuals participating in this action. As "division" and "regional" managers, Messrs. D'Urso and Mock were at least one level removed from supervising any of the SMRs who opted-in to this action. D'Urso Dep. 14:6-11 (as Regional Manager, direct reports were Division Managers); Mock Dep. 166:24 - 167:2 (did not directly supervise SMRs); 219:22 - 220:6 (indirectly supervised SMRs through Sales Managers). Mr. Mock has not served as a direct supervisor of any SMR since 1998, when he was promoted from Sales Manager to District Manager. Mock Dep. 132:14-22. While it is true that Mr. Mock oversaw the division to which several of the opt-ins were assigned (including two of the Deposed Plaintiffs, Kevin Tripler and JoLaine Savarino), he was not responsible for overseeing their daily activities or work performance.[10] Mock Dep. 133:9 - 134:3 (Mock's duties consist of oversight of land acquisition, supervision of Sales Managers, and managing production and service of homes); 145:20-24 (minimal involvement with SMR training); 166:11 - 167:9 (did not directly supervise opt-in plaintiffs). Mr. D'Urso never served as a Sales Manager, and, therefore, never had direct supervisory relationships with any of the SMRs who opted-in to this action. D'Urso Dep. 8:16-10:2. Ms. Sobieski was even further removed from the SMRs' daily working activities. As Vice President of Sales and Marketing since April 2006, Ms. Sobieski is responsible for training and coaching Sales Managers and has little direct contact with SMRs in the field. Sobieski Dep. 13:9-13:13; 17:25-18:7; 40:13-19. She did not directly supervise any of the opt-in plaintiffs who are participating in this litigation. Sobieski Dep. 68:12 - 74:5.

---

[10] Plaintiffs note that Mr. D'Urso was not aware or informed of the lawsuit. Dkt. 580, p.9. Plaintiffs fail to note that from 2002, which is two years before this litigation commenced, through May 2007, when Mr. D'Urso left the Company, Mr. D'Urso was a Regional Manager, which made him at least two levels removed from supervising any of the SMRs who opted-in to this action. D'Urso Dep. 7:20-25;12:16-19; 14:6-11.

Notably, Plaintiffs made no effort to depose any current or former manager of opt-in plaintiff Amber Wilcox, who remains a current employee.  In fact, none of the Deposed Managers whom Plaintiffs deposed during the sixth extension of the discovery period ever supervised any of the participants in this action after such individual became a participant in this case.

In their lengthy depositions of each of the six Deposed Managers, Plaintiffs' counsel asked relatively few questions relating to any issue pertaining to the merits of this case, instead spending an inordinate amount of time inquiring about each Deposed Managers' emailing, word processing, and paper filing habits.[11]  Plaintiffs also expended considerable effort asking the Deposed Managers exactly when certain opt-in plaintiffs were issued computers and email addresses, whether the computers they were issued were desktops or laptops, and if the Company maintained a record of the serial numbers on those computers.  See, e.g., Mock Dep. 341:7-343:3; Wilcox Dep. 122:10-25; Partington Dep. 151:4-153:19.  Viewed cumulatively, the deposition testimony that Plaintiffs' counsel elicited after the sixth extension of the discovery period belies an intent to engender further discovery disputes, including a particular focus on manufacturing some issue pertaining to the sufficiency of NVR's document preservation efforts, rather than addressing any issue germane to the merits of their case.

---

[11] See generally, Mock Dep. 29 - 65 (extended examination regarding use of various software packages and e-mail filing practices); see also Mock Dep. 224:19-226:7 ("How is [the traffic report] sent to the office? . . . So it's e-mailed to you personally? . . . Who is it e-mailed to? . . . Then do they forward it to you? . . . How is that sent out, via e-mail? . . . Was it previously sent out via fax? . . . Was it ever distributed in hard copy…?"); Partington Dep. 43:16-18;  45:22-23; 47:19-25 ("So let's say you received an email.  What would you do with that email; what would be the different ways you might deal with it? . . . As far as any documents that you would generate, did you use Microsoft Word . . .  to create documents?… Did you generate documents using Excel? . . . Did you review documents . . . from Excel? . . . Typically, how would you receive documents that you reviewed from Excel?"); D'Urso Dep. 90:4-91:4; 92:17-25 ("Are you familiar with a hard drive?  . . . Do you understand a hard drive to be a storage medium within your laptop or within a computer? . . . Was it your practice to save electronic files to the hard drive on your laptop? . . . [W]hen you were working for NVR, in addition to your laptop, did you use any external storage devices, such as external hard drives or thumb drives?  I love the glazed look. . . Are you familiar with the phrase 'thumb drive'? . . . A.: This is embarrassing.  I understand the phrase. I don't use them."); Barrett Dep. 33:12 - 34:6 ("Do you currently use e-mail?"); Sobieski Dep. 10:9-11; 61:11-17 ("Do you have a cell phone? . . . Does that cell phone access any e-mail? . . . Is it an old fashioned type flip phone that has just phone and text? . . . Do you use an ipad or tablet computer…? What is your typical practice with regard to receiving e-mail and whether you move it to a folder or not or delete it?"); Wilcox Dep. 34:16-18 ("Did you use Outlook for your e-mail? . . . Did you have folders within Outlook?").

By focusing a great deal of their questioning on these witnesses' current information management practices, Plaintiffs' counsel elicited a significant volume of evidence that is entirely irrelevant.  During the period of time that the Deposed Managers had direct or indirect contact with the participants in this litigation, NVR had almost no computer infrastructure, but there has been substantial development in the Company's use of information technology during the prolonged period in which this action has been pending.  Mock Dep. 240:1 - 241:12 (prior to 2007, NVR operated as a "dinosaur" and did not rely on information technology).  As but one illustrative example, the majority of the individuals who have joined this litigation worked at a time before computers had even been deployed to SMRs in the field.  Mock Dep. 238:16 - 239:4 (computers added to model homes in 2007-2008); 349:13 - 351:12 (SMRs did not have e-mail prior to computers being placed in models).  Since those individuals have left NVR, the Company has converted its operations to rely in substantial part on the computer-generated reporting and e-mail communications that were the primary focus of Plaintiffs' counsel's discovery efforts during the most recent extension of the discovery period.  Mock Dep. 339:5-21 (conversion of certain communications with the customers to e-mail); 352:10-16 (NVR is presently "coming out of the dark ages" and now SMRs produce certain purchase documents through software on computers).  The extensive corpus of deposition testimony that Plaintiffs' counsel has created with respect to the current recordkeeping habits of NVR managers who have not supervised any participant in this action for a period of at least several years, therefore, does nothing to illuminate the extent of NVR's litigation hold efforts.

## ARGUMENT

Plaintiffs' Motion is fatally flawed because it makes no connection between any of the documents that the Deposed Managers declined to preserve and any matter at issue in this litigation.  Plaintiffs' Motion also fails because, in insinuating that every NVR employee who indirectly or directly supervised any SMR at any time since October 29, 2004 had a duty to preserve his or her

documents related to any such SMR, Plaintiffs misconstrue NVR's litigation hold obligations. Plaintiffs have not made any showing that NVR failed to produce evidence that is relevant to this litigation, and the Court should deny their Motion to Compel in its entirety.

**I.      Plaintiffs' Assertions Regarding NVR's Efforts to Preserve Evidence are Premised on Mischaracterizations of the Record.**

In support of their assertions that NVR has lapsed in its litigation hold obligations, Plaintiffs cite deposition testimony that purportedly establishes that the Deposed Managers did not keep various documents.  In the end, however, this effort amounts to nothing but a labored exercise in question begging because none of the cited testimony reflects that documents that these individuals declined to preserve would have any application to this litigation.

Plaintiffs direct much of their attack toward Division Manager Paul Mock, asserting that he "testified to freely destroying and discarding responsive and otherwise probative evidence."  Plffs. Mem., pp. 3-4.  However, the testimony that Plaintiffs cite does not support their accusations. Plaintiffs are correct that Mr. Mock testified that he presently does not, in the usual course, retain materials including personal desk copies of quarterly marketing reports (Mock Dep. 222:3-25), personal desk copies of community traffic reports (Mock Dep. 223:17- 227:3), duplicative copies of secret shop reports that he receives from Sales Managers (Mock Dep. 289:9 - 290:8), and duplicative copies of customer surveys (Mock Dep. 339:25 - 340:24[12]).  None of this testimony comes close to a showing that Mr. Mock has failed to retain relevant or otherwise probative evidence.

First, it is clear from Mr. Mock's testimony at the cited passages that all of the documents that Plaintiffs' counsel has accused Mr. Mock of recklessly destroying are his own duplicative printouts of reports and other documents that NVR retains elsewhere in its records.  This fact is confirmed by the Declaration of Paul Mock filed contemporaneously with this Opposition.  *See* Mock Dec., ¶¶ 6-8.

---

[12] In his errata sheet, Mr. Mock clarified that while he personally does not retain copies of customer survey forms, NVR does keep them in its customer files.  *See* Errata sheet, supplied with Mock Dep.

As detailed more fully in Section II(B) below, NVR had no obligation and no reason to preserve this duplicative information, and Plaintiffs' allegations regarding Mr. Mock's supposed destruction of probative evidence are spurious.

More importantly, none of the information described in the testimony from Mr. Mock that Plaintiffs cite as the basis for their Motion is probative of any fact at issue in this litigation. Plaintiffs' questions on these subjects, and Mr. Mock's testimony in response to those questions, were confined to his current recordkeeping practices. Mock Dec., ¶ 6. However, none of the records that presently pass through Mr. Mock's possession or control pertain to any plaintiff who is participating in this litigation. Indeed, none of the opt-in plaintiffs have even been in Mr. Mock's indirect line of supervision for more than four years. Mock Dec., ¶¶ 4-5. Furthermore, each of the opt-in plaintiffs who worked in Mr. Mock's division had ceased to work for NVR before joining the litigation.[13] *Id.* By the time the plaintiffs who previously worked in Mr. Mock's Division joined this case, there was no cause to believe that any quarterly marketing reports, community traffic reports, secret shop reports or customer surveys pertaining to those former employees would be generated or transmitted to Mr. Mock. Plaintiffs' accusations of spoliation are, therefore, reckless and unfounded.

Similarly, in asserting that the other Deposed Managers "testified to destroying relevant and probative evidence," Plaintiffs also mischaracterize the record:

- Mr. D'Urso testified only that, as a general practice, he would delete some of his emails. He did not provide even a cursory description as to the content or substance of the emails he had deleted. D'Urso Dep. 93:20-94:8. Contrary to Plaintiffs' portrayal, his testimony does not show that he destroyed any evidence that should have been preserved.

---

[13] Plaintiffs cannot claim that they were unaware that each of the opt-in plaintiffs whom Mr. Mock indirectly supervised had left NVR before joining the litigation. Of course, each of those individuals was presumably aware that he or she had left the Company before joining the lawsuit. Even to the extent that Plaintiffs' counsel failed to obtain that information from their clients, that information was conveyed to Plaintiffs' counsel at Mr. Mock's deposition. *See* Mock Dep. 163:9 - 167:6.

- Mr. Barrett testified only that he deleted emails that he thought he would no longer need, such as an email attaching a "Closed" sign, which, once printed, was no longer needed. Barrett Dep. 34:19-35:15.  Thus, Plaintiffs' assertion that Mr. Barrett testified to deleting emails from SMRs (Plffs. Mem., p. 4) is, once again, an overt mischaracterization of the record.  Also, while Mr. Barrett testified that he did not retain his personal copies of customer surveys (Barrett Dep. 136:4-19), those surveys were duplicative because NVR keeps copies of the surveys in its customer files, as described above.  *See supra* note 12.

- Mr. Wilcox testified only that he occasionally deleted emails after he had printed them and that, if he was forced to purge some of his emails because his emails were taking up too much space on the system, he would do so.  Wilcox Dep. 34:20-35:5.  Again, Mr. Wilcox did not provide any testimony as to the content or substance of any emails that he deleted. Wilcox Dep. 34:20-35:24.  Mr. Wilcox testified to discarding marketing reports that he received as a Sales Manager when he no longer needed them (Wilcox Dep. 71:14-72:3), but Mr. Wilcox last supervised an opt-in plaintiff on or about October 31, 2006, which was before Mr. Tracy had even filed his motion seeking leave to send notice of the pendency of this action to prospective opt-in plaintiffs.  As explained in Section II(A) below, there was no duty for Mr. Wilcox to maintain those reports merely because some of the SMRs whom he had supervised might some day join the litigation.

- Mr. Partington testified that he did not retain all of his emails and Word documents because of system constraints.  Partington Dep. 43:16-44:2; 45:3-7; 45:16-20.  He did not, however, provide any testimony as to the content or substance of the emails or Word documents that he deleted.  Partington Dep. 43:16-44:2; 45:3-7; 45:16-20.  The only specific documents that Mr. Partington testified to discarding were weekly lists of the SMR's top ten prospects and, even then, Mr. Partington testified only that he did so when the lists became redundant.

Partington Dep. 183:15-184:9.  Additionally, Mr. Partington last supervised a participant in this litigation in January 2003.  Brader Dec., ¶ 5.  To the extent Mr. Partington received or generated any potentially probative emails or other documents at that time, there would have been no reason for him to have retained those documents because the litigation had not yet commenced.

- Ms. Sobieski testified that her current practice is to delete emails if she thinks she will not need them in the future.  Sobieski Dep. 61:11-24.  Again, Ms. Sobieski did not testify as to the content or substance of any of the emails that she deleted.  Ms. Sobieski also testified that, as Vice President of Sales and Marketing, she has periodically discarded consolidated traffic reports over the past 2-3 years.  Sobieski Dep. 139:7-143:6.  However, by the time she started doing so, each of the opt-in plaintiffs who worked in Ms. Sobieski's region had ceased to work for NVR.  Brader Dec., ¶¶ 9-10.  Thus, there was no reason to believe that any traffic reports pertaining to opt-in plaintiffs would be generated by or transmitted to Ms. Sobieski.  Additionally, the traffic reports that Ms. Sobieski received, both as Vice President and previously as Regional Manager of Sales and Marketing, included information compiled from several different NVR communities and, therefore, were duplicative of lower-level traffic reports submitted to Sales Managers.  Sobieski Dep. 141:12-142:9.  Plaintiffs also point out that Ms. Sobieski testified that, as Regional Manager of Sales and Marketing, she periodically deleted secret shopping reports.  However, as noted above, such reports are duplicative of reports that are also sent to Sales Managers.  Mock Dep. 289:9 - 290:8.

Plaintiffs' histrionic assertion that "all deponents testified to destroying relevant and probative evidence that should have been preserved" is, at best, a gross mischaracterization of the record. While the Deposed Managers testified that they do not retain every single email that they receive or

12

generate, none of the Deposed Managers testified that they have ever deleted an email that may have

relevance to this litigation.  Yet, to establish spoliation, "[t]he burden falls on the 'prejudiced party'

to produce 'some evidence suggesting that a document or documents relevant to substantiating his

claim would have been included among the destroyed files.'"  *Byrnie v. Town of Cromwell Bd. of

Educ.*, 243 F.3d 93, 108 (2d Cir. 2001) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d

Cir. 1998)).  Having established only the uncontroversial point that NVR did not preserve every shred

of information that passed through the Company during the seven-year pendency of this case,

Plaintiffs have fallen far short of making any showing that would warrant any of the relief they

request in their present Motion.

**II.      Plaintiffs Overstate NVR's Supposed Litigation Hold Obligations.**

        In addition to gross distortions of the record, Plaintiffs' Motion is premised on a

characterization of NVR's litigation hold obligations that is not supported by law or logic.  By

arguing that they have made a showing of spoliation based only on the fact that the Company has not

retained all information pertaining to all of its SMRs, Plaintiffs tacitly contend that NVR was

obligated to retain all information in its possession pertaining to all SMRs from the filing of this

lawsuit to the present date.  However, NVR's document preservation obligations do not extend to

every scrap of paper or byte of data pertaining to every aspect of every SMR's employment spanning

an unbounded period of time. The standard Plaintiffs have attempted to set out here far exceeds

anything contemplated by the federal rules or the precedents on which Plaintiffs attempt to rely.

        Though Plaintiffs equate NVR's conduct in this action with the defendant's conduct in

*Zubulake v. UBS Warburg, LLC*, their analogy fails on every level.  *Zubulake* was a "routine" gender

discrimination case brought by a single plaintiff against her former employer for wrongful

termination.  229 F.R.D. 422, 424 (S.D.N.Y. July 20, 2004) ("*Zubulake V*").  During discovery,

Zubulake definitively established that half a dozen "key players" in the litigation failed to follow the

13

litigation hold instructions they received from counsel and purposefully deleted or withheld specific emails that were "especially relevant" to the plaintiff's claims.  229 F.R.D. at 436  (deletion of emails was in spite of explicit instructions not to do so and, therefore, was presumed to be willful).  Here, Plaintiffs can point to no such evidence of spoliation and base their accusations that NVR has not preserved relevant evidence only on unsupported extrapolation and innuendo.

Even if Plaintiffs had a factual basis for their claims of spoliation, the authorities on which Plaintiffs rely would not support the litigation hold obligations that Plaintiffs seek to impose on NVR.  Notably, *Zubulake* was a single plaintiff discrimination case.  Even assuming the breadth of *Zubulake* is as broad as Plaintiffs contend, requiring an employer to preserve everything regarding a single employee, as in *Zubulake*, is a far cry from what Plaintiffs seek here.  The *Zubulake* court extolled counsel and clients to "take *some reasonable steps* to see that sources of relevant information are located."  *Zubulake V,* 229 F.R.D. at 432 (emphasis in original).  What Plaintiffs imply NVR should have done here -- namely, save every report related to each one the Company's hundreds of SMRs (the vast majority of whom elected not to participate in this case) -- far exceeds the reasonable steps outlined in *Zubulake*.

The other case on which Plaintiffs rely, *Keir v. Unumprovident Corp*., also fails to support their sweeping construction of NVR's supposed litigation hold obligations.  While *Keir* was a class action, it is nonetheless distinguishable from the present dispute.  In *Keir*, the Court directed the defendant company to preserve certain electronic data, specifically emails that were sent or received on six particular days.  Before the Court entered the Order, the defendant's technical staff unilaterally decided to take a "snapshot" of the servers, rather than restoring the back-up tapes.  Then, once the Order was entered, Defendant failed to ameliorate the damage done by that decision and continued to overwrite the tapes.  As a result, emails from the six days in question were irretrievably lost.  *Keir*, 2003 WL 21997747, *12 (S.D.N.Y. Aug. 22, 2003).  Here, there was no preexisting order from this

Court to the effect that NVR was required to preserve years worth of electronic data, none of which would have any clear application to this case.

Further, if Plaintiffs had entertained a desire to impose the exceedingly broad litigation hold obligations they now seek to foist upon NVR at the conclusion of discovery, they had ample opportunity to do so at the outset of the case or at some seasonable time during the four years of discovery that preceded Plaintiffs' present Motion. *See Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1287 (M.D. Fla. 2009) (no duty for defendant to preserve certain evidence where plaintiff did not put defendant on notice through a preservation letter or otherwise that the evidence needed to be preserved). Instead, they chose to wait until the completion of discovery was imminent to raise this issue. Notably, Plaintiffs failed to ask any of the managers whom they deposed several years ago-- Kent Eshleman, Thomas Delaney or Mark Aberi -- whether they ever received litigation hold notices. Indeed, Plaintiffs failed even to ask NVR's Rule 30(b)(6) witness about the Company's litigation hold notice. To cry foul now is belated and inappropriate, in addition to being a transparent ruse to further extend discovery and delay the resolution of this action.

### A. NVR had No Obligation to Hold Documents For Individuals Who Had Not Joined the Litigation.

Plaintiffs take the position that "defendant and its counsel have had a continuing obligation to preserve documents since October 29, 2004, *at the latest*." Plffs. Mem., p. 5 (emphasis in original). Again, Plaintiffs stake their position on question begging because they overlook the critical questions of who documents NVR was obligated to preserve at that time and who had that obligation. As of October 29, 2004, the only party who had asserted any claims against NVR was Patrick Tracy. Indeed, Plaintiffs did not even file a motion seeking leave to send notice of the pendency of this action to prospective opt-in plaintiffs until February 16, 2007. (Dkt. 45). Plaintiffs' assertions regarding the scope of NVR's litigation hold obligations are, therefore, dramatically exaggerated.

15

There is no case cited in Plaintiffs' Memorandum or revealed by NVR's research in which a defendant in a putative opt-in collective action case was held to be required to preserve all evidence pertaining to all individuals who might eventually join a case.  Indeed, the case law unsurprisingly provides that there is no such duty.  *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("*Zubulake IV*") ("Must a corporation, upon recognizing the threat of litigation, preserve every shred of paper, every e-mail or electronic document, and every back-up tape?  The answer is clearly 'no.'"); *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006) (no spoliation where "employees have simply deleted emails because they had no legitimate business reason, even though the contents of the communications might, at a later date, have some relevance to a lawsuit"); *O'Brien v. Ed Donnelly Enters.*, No. 2:04-cv-85, 2006 WL 2583327, *5 (S.D.Ohio Sept. 5, 2006) (rejecting claim of spoliation based on the destruction of a document after an FLSA suit was filed but before the individual to whom the document pertained opted into the suit).

## B. <u>NVR had No Obligation to Retain Duplicative Information.</u>

By asserting that NVR has spoliated evidence based on deposition testimony to the effect that the Deposed Managers did not retain their personal desk copies of various reports that passed through their possession, Plaintiffs also impliedly contend that NVR was obligated to retain each and every copy of every report pertaining to SMRs' activities.  Again, the standard to which Plaintiffs seek to hold NVR is unsupported by the governing law.  NVR was under no obligation to preserve multiple copies of the same reports, whether in hard copy or electronic format.  Indeed, Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure requires courts to "limit the frequency or extent of discovery" where the discovery sought is duplicative.  Thus, in *O'Brien v. Ed Donnelly Enters.*, the Sixth Circuit rejected a plaintiff's claim of spoliation where an employer destroyed electronic versions of reports but produced hard copies of those same reports because "[w]hat matters is whether the employer produces the reports in discovery, in either hard copy or electronic form."  575 F.3d at 588.  This

follows from the principle, as articulated in *Zubulake IV*, that the duty to preserve only extends to "unique, relevant evidence that might be useful to an adversary." 220 F.R.D. at 217 (emphasis added). *See also Toth v. Parish*, No. 06-998, 2009 U.S. Dist. LEXIS 16116 (W.D. La. Mar. 2, 2009) (no duty to preserve electronic personnel records where the relevant information was also in paper form). As noted above, while the Deposed Managers did testify that it was their practice to delete or discard certain reports pertaining to SMRs, their testimony was clear that the reports at issue were duplicative desk copies of information that the Company retained elsewhere in its files. Mock Dep. 289:9 – 290:8; 339:25 – 340:24; Partington Dep. 183:15 – 184:9; Sobieski Dep. 139:7 – 143:6. Plaintiffs have not shown that any information pertaining to any individual participating in this litigation has been lost as a result of the information management practices described in the deposition testimony of the Deposed Managers. As such, their Motion fails.

**C. NVR had No Obligation to Maintain Litigation Hold Protocols For Supervisors Who Ceased to Supervise Any of the Plaintiffs.**

Plaintiffs' rhetoric regarding the destruction of information as part of NVR's ongoing business operations also overstates NVR's obligations to suspend usual protocols for the culling of information not needed for business purposes. Plaintiffs' protestations about NVR's supposed ongoing and widespread destruction of evidence fails to account for several critical facts. This litigation concerns a fixed group of people, nearly all of whom left the Company years ago. The Court's Order conditionally certifying a collective action in this matter explicitly provides that "Members of the Putative Class who have not mailed consents to join this action on or before September 12, 2007 shall not be allowed to participate in this action . . ." Dkt. 141, p. 2. As noted above, by the time that the opt-in period that the Court specified had run its course, it was apparent that nearly all of the participants in this case had ceased to work for the Company. There was no need to suspend document destruction protocols as to that overwhelming majority of the opt in

plaintiffs who had left NVR because the Company had no reason to believe that it would continue to generate information bearing on their individual circumstances or activities.

For this reason, the deposition testimony on which Plaintiffs rely not only fails to establish spoliation, it is entirely irrelevant to that issue.  The testimony that Plaintiffs elicited from the two Deposed Managers who still act as managers for the Company pertained to their current practices regarding preservation of e-mail and other documents (Sobieski Dep. 141:3-4; Mock Dec. ¶ 6), but neither of those individuals has had even an indirect supervisory relationship with respect to any participant in this litigation for many years.  Sobieski Dep. 13:9-13; 17:25-18:7; 40:13-19; Mock Dep. 132:14-22; Mock Dec., ¶ 5.  Similarly, none of the other Deposed Managers have had a supervisory relationship with respect to any participant in this litigation for many years.  Partington Dep. 28:14-30:5; Barrett Dep. 125:9; D'Urso Dep. 8:16-10:2; 14:6-11; Brader Dec., ¶¶ 4-10.  Indeed, it is uncontroverted that none of the Deposed Managers ever was in a supervisory relationship with any participant in this litigation while that individual was an active employee of NVR.

Plaintiffs' assertion that "NVR did not suspend its automatic document destruction policies or remind employees of their preservation obligations" (Plffs. Mem., p.7) fails to take into consideration that this case does not concern a single individual who has been supervised by a Deposed Manager after such individual joined the litigation, and there is no reason for NVR to expect that any of the Deposed Managers will generate, receive or come into contact with any information that bears on any of the claims asserted by any of the individuals participating in this litigation.  As such, there was no cause to institute the type of burdensome, all encompassing and perpetual litigation hold protocol that Plaintiffs impliedly contend was necessary with respect to the Deposed Managers.  *Zubulake IV,* 220 F.R.D. at 218 (duty to preserve extends only to those likely to have relevant information).

## D.   The Six Deposed Managers Are Not "Key Players."

Plaintiffs' Motion to Compel is also grounded in a misconstruction of the applicable law because it is premised on the indefensible assertion that all six of the Deposed Managers are "key players" in this litigation, in the sense that the *Zubulake* court used that term.  In that case, the court used the term "key players" to refer to individuals who were likely to have relevant information as a result of their working interactions with the plaintiff.  *Zubulake IV*, 220 F.R.D. at 218.  Alternatively, the court referred to "key players" in terms of individuals listed in a party's mandatory disclosures. *Zubulake V*, 229 F.R.D. at 433-34.

As Plaintiffs concede, Mr. Mock, the only Deposed Manager identified in NVR's initial disclosure, recalls receiving a litigation hold notice regarding this action in 2007, even though he had no SMRs who had joined the litigation within his line of supervision at the time that he received the notice.  Mock Dep. 29:3 - 30:6; 132:14-22; 166:24-167:2; 219:22-220:6.[14]   More importantly, the Deposed Managers ceased to be "key players" in the sense of having an ongoing supervisory relationship with any of the participants in this action before each of those individuals joined this case.  There was no reason for NVR to provide broader or ongoing litigation hold instructions to the Deposed Managers in the manner that Plaintiffs assert.

## III.     NVR's Litigation Hold Instructions Are Privileged

In the end, whatever imagined shortcomings Plaintiffs claim to have uncovered in NVR's document retention efforts, such allegations are woefully insufficient to justify production of NVR's privileged litigation hold instructions.  Plaintiffs have not, and cannot, show that NVR failed to

---

[14] Plaintiffs argue that Mr. Mock, Mr. D'Urso, and Ms. Sobieski are "key players" by virtue of their managerial positions in regions or divisions where SMRs worked (Plffs. Mem., p.8 n.2), even though they did not directly supervise SMRs. Plaintiffs, therefore, apparently believe that any managerial employee who worked in a region or division where an SMR also worked is a "key player," regardless of whether the managerial employee ever directly supervised an SMR.  If that were true, then nearly every management employee who has worked at NVR since 2004 would be a "key player."  Such an interpretation is absurd.

satisfy its document preservation obligations.  Simply repeating the mantra "spoliation" does not make it so.  Accordingly, communications regarding NVR's litigation and preservation efforts are privileged.  *See Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116 (N.D. Ga. 2007).  Plaintiffs fully concede this point in their Motion.  Plffs. Mem., pp. 10-11.

## CONCLUSION

Despite Plaintiffs' considerable efforts to use depositions they were permitted to take during the sixth extension of the discovery period to conjure additional discovery disputes and prolong the resolution of this matter, Plaintiffs' Motion to Compel falls far short of establishing that NVR has failed to preserve any probative evidence.  Neither the factual record nor the governing case law supports Plaintiffs' contention that NVR has failed to meet its obligations to preserve probative evidence.  As such, Plaintiffs' Motion should be denied in its entirety, and Defendant should be awarded its costs in responding to Plaintiffs' meritless filing pursuant to Fed. R. Civ. P. 37(a)(5)(B).

Dated: July 8, 2011                                    Respectfully submitted,

                                                       /s/ Barry J. Miller
                                                       SEYFARTH SHAW LLP

            Richard L. Alfred              Lorie E. Almon
            Barry J. Miller                620 Eighth Avenue
            Dana L. Fleming                New York, New York 10018
            James M. Hlawek                (212) 218-5500
            2 Seaport Lane, Suite 300      lalmon@seyfarth.com
            Boston, MA 02210
            (617) 946-4800
            bmiller@seyfarth.com

            *Attorneys for Defendant NVR, Inc.*

            WOODS OVIATT GILMAN LLP
            William G. Bauer
            700 Crossroads Building, 2 State Street
            Rochester, NY 14614
            (585) 987-2800
            wbauer@woodsoviatt.com
            *Local counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2011, I electronically filed the foregoing NVR, Inc.'s Opposition to Plaintiffs' Motion to Compel through the Court's ECF system, which sent notification of such filing to the following counsel of record for Plaintiffs:

J. Nelson Thomas
Thomas & Solomon LLP
693 East Avenue
Rochester, New York 14607
(585) 272-0540
nthomas@theemploymentattorneys.com

By: */s/ Barry J. Miller* _____
       Barry J. Miller

13484263v.8