UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                               :
PATRICK TRACY, et al.,                                                         :   No. 04-CV-06541 DGL(P)
on behalf of themselves and all other                                          :
employees similarly situated,                                                  :
                                                                               :
                              Plaintiff,                   :
                                                                               :
        v.                                                                   :
                                                                               :
NVR, INC.,                                                                     :
                                                                               :
                              Defendant.                   :
                                                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR SANCTIONS REGARDING
PLAINTIFF MEGAN FOX DONAHUE'S SPOLIATION OF EVIDENCE**

Of Counsel:

Lorie E. Almon
Richard L. Alfred
Barry J. Miller (*pro hac vice*)
Dana L. Fleming (*pro hac vice*)
James M. Hlawek (*pro hac vice*)

Local Counsel:

William G. Bauer

                           SEYFARTH SHAW LLP
                             620 Eighth Avenue
                             New York, NY 10018
                             ---------------------
                      Two Seaport Lane, Suite 300
                             Boston, MA 02210


                      WOODS OVIATT GILMAN LLP
             700 Crossroads Building, 2 State Street
                             Rochester, NY 14614

                       *Attorneys for Defendant NVR, Inc.*

13756859v.2

**PRELIMINARY STATEMENT**

In their Opposition to NVR's Motion for Sanctions, Plaintiffs ply a multitude of transparent and misleading tactics in an attempt to downplay the seriousness of Ms. Donahue's actions. They misstate Ms. Donahue's deposition testimony to argue that she never admitted to destroying evidence. They misstate the law to argue that there are no grounds for the Court to impose an adverse inference. And they mischaracterize or simply ignore key facts to argue that Ms. Donahue's actions were harmless. But, try as they might, Plaintiffs cannot avoid the consequences of Ms. Donahue's conduct. Ms. Donahue destroyed—and even deliberately altered—highly probative evidence, namely day runners and an expense report that were some of the only contemporaneous records of her hours of work and activities outside the model homes to which she was assigned. Her actions warrant serious sanctions, even if those sanctions result in the dismissal of her claims against NVR.

I.   **PLAINTIFFS MISCHARACTERIZE AND DOWNPLAY THE SERIOUSNESS OF MS. DONAHUE'S SPOLIATION**

Plaintiffs have attempted to understate the significance of Ms. Donahue's actions by mischaracterizing what she did, but the record leaves no room for doubt regarding the gravity of Ms. Donahue's actions—she destroyed and deliberately altered probative evidence related to the extent of her outside sales activities, the issue at the core of this case.

   A.   **Plaintiffs mischaracterize the alteration and destruction of Ms. Donahue's day runners.**

Plaintiffs contend that Ms. Donahue's testimony contradicts NVR's claim that she destroyed the originals of her day runners and that Ms. Donahue only mentioned that she may have shredded the originals "in response to a hypothetical question," Pl. Opp. at 6, 16.

1

However, contrary to Plaintiffs' contention, Ms. Donahue clearly testified that she believes that she destroyed the originals:

> Q: So did you retain the originals of the [day runner] pages that corresponded to the copies that you sent to Thomas & Solomon?
>
> A: I can't say that I did but I don't remember.
>
> Q: You don't remember one way or the other?
>
> A: If I don't have them now I believe they're gone.
>
> Q: What would have happened to them?
>
> A: Shredded.
>
> Q: And you would have done that at some point after sending the copies to Thomas & Solomon?
>
> A: Correct.
>
> Q: And you don't know one way or the other whether you have them now?
>
> A: I'm pretty sure I don't have them now because I can't find them.
>
> Q: You looked for them?
>
> A: I know where what I have is, and it's not there.
>
> Q: You looked there?
>
> A: No. I know what's there. It was recently placed there and it's not there.
>
> Q: And your belief is that you must have shredded it?
>
> A: Yes.

Donahue Dep., 462:10 - 463:13.[1]  Plaintiffs' suggestion that Ms. Donahue was speaking only hypothetically or that her testimony contradicts NVR's claim is disingenuous; her testimony proves otherwise.

Plaintiffs also seek to minimize the significance of Ms. Donahue's spoliation by claiming that there are only four discrepancies on her day runners.  However, the four discrepancies that NVR identified in its brief were just examples to demonstrate the significance of the extensive alteration of Ms. Donahue's day runners.  In fact, there are several other discrepancies including:

---

[1] The cited portions of Ms. Donahue's deposition testimony are attached as <u>Exhibit A</u> to the Declaration of Barry Miller, Esq., which is filed contemporaneously herewith ("Miller Decl.").

- An entry on one version of the page from Ms. Donahue's calendar for January 2001 notes a meeting with a client called "Homes for Life," while that entry is absent from a second version of the January 2001 calendar.  Miller Decl., <u>Exhibit B</u>.

- An entry on one version of the page from Ms. Donahue's calendar for June 2001 notes "leave @ 4:30—Mendenhall @ 6 pm," while that entry is absent from a second version of the January 2001 calendar. Miller Decl., <u>Exhibit C</u>.

Moreover, the alterations that NVR has identified are only those that are obvious from the face of the documents.  Ms. Donahue testified that she could not recall the nature or extent of her alterations of the documents.  Donahue Dep., 454:12-455:3, 458:25-459:11; 469:8-470:7; 474:12-475:18.  The full extent of Ms. Donahue's spoliation will likely never be known, and NVR should not be denied relief for Ms. Donahue's misconduct on the grounds that it is not in a position to fully describe Ms. Donahue's efforts to destroy and obfuscate evidence.

Plaintiffs attempt to provide an innocuous explanation for these discrepancies by asserting that "Ms. Donahue indicated that she may have kept multiple calendars in her ordinary course of business and life."  Pl. Opp. at 5.   However, Ms. Donahue made no such suggestion— on the contrary, she testified that "I can't think of any reason why I would" have multiple copies of the day runners.  Donahue Dep., 467:23; *see also* Donahue Dep. at 458:17-459:20; 467:15-25.[2]  As NVR pointed out in its brief, the extent of these discrepancies, the fact that the discrepancies relate to outside sales activities, and Ms. Donahue's inability to provide an explanation for the discrepancies all point to a systematic effort to alter the day runners by removing or altering references to outside sales activities.

---

[2] The "multiple copies" explanation for the discrepancies in Ms. Donahue's day runners would be highly dubious, even if it were consistent with her deposition testimony.  It is unimaginable, for example, that Ms. Donahue would have kept two calendars for the month of December 2000 containing extensive identical handwritten entries, with the exception that one of the dates had an entry for a meeting with a client called "Home for Life" whereas the other calendar did not have that meeting, but instead had an entry for "Meig-en."

3

### B. Plaintiffs mischaracterize Ms. Donahue's destruction of her expense report.

Plaintiffs suggest that the extent of Ms. Donahue's spoliation with regards to her expense report was to add a "speck" of white out (Pl. Opp. at 4-5, 12), while overlooking the fact that she also destroyed the original of her expense report. As Ms. Donahue admitted in her testimony, she not only altered the document, she also proceeded to destroy the original after her counsel returned it to her. Donahue Dep., 565:15-567:15. While Plaintiffs also attempt to downplay the significance of Ms. Donahue's destruction of the expense report by arguing that her counsel had an identical copy (Pl. Opp. at 12), the document that Ms. Donahue destroyed was unique because it was the original.[3] As the Court pointed out during a recent hearing, an expert could have removed the white-out from the original to determine exactly what Ms. Donahue blotted on her expense report. Miller Decl., Exhibit D at 64-65. In destroying the original of her expense report, Ms. Donahue also destroyed any possibility of determining what she was trying to conceal.

## II. THE NATURE AND EXTENT OF MS. DONAHUE'S SPOLIATION JUSTIFY AN ADVERSE INFERENCE INSTRUCTION.

Ms. Donahue's destruction and alteration of her day runners and her expense report warrant imposition of an adverse inference that she was customarily and regularly engaged in outside sales activities. Plaintiffs assert that an adverse inference instruction is inappropriate because NVR cannot establish the necessary elements for such a sanction—1) a duty to preserve; 2) a culpable state of mind; and 3) destruction of evidence relevant to the party's claim or defense. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir.

---

[3] Plaintiffs' counsel was not ignorant of Ms. Donahue's obfuscation of her expense report, as demonstrated by the fact that Plaintiffs' counsel stamped their copy of the document "Redacted" based on their understanding that Ms. Donahue had used white-out to obscure information on the document. Donahue Dep., 370:14-371:19, 565:11-567:16.

4

2002). However, NVR has established each of these elements—Plaintiffs' assertions to the contrary are based on mischaracterization of the facts and/or a misreading of the standard for establishing the respective elements.

### A. Ms. Donahue had a duty to preserve when she spoliated her expense report and her day runners.

Plaintiffs contend that, since it is unclear when Ms. Donahue added white-out to her expense report, NVR cannot establish that she had a duty to preserve at the time she altered the expense report. Pl. Opp. at 11-12. However, regardless of whether Ms. Donahue had a preservation duty when she decided to hide information on her expense report, she proceeded to destroy the original of her expense report—the only version from which NVR could have determined what she concealed—after her counsel returned it to her in the middle of discovery. Donahue Dep., 567:14-568:2. There can be no doubt that both Ms. Donahue and Plaintiffs' counsel had a duty to preserve at that point.

Plaintiffs also argue that there is no evidence that Ms. Donahue destroyed the originals of her day runners. Pl. Opp. at 16. However, as described above, Ms. Donahue herself testified that she believed she had shredded the originals, and that she had done so <u>after</u> she sent the copies to her counsel in connection with this litigation. Clearly, Ms. Donahue and Plaintiffs' counsel had a duty to preserve the originals of her day runners at that point in the litigation.

### B. To establish a culpable state of mind, NVR need only show ordinary negligence, which Plaintiffs concede to exist here.

Plaintiffs misstate the standard for establishing that Ms. Donahue acted with a culpable state of mind. They contend, without support, that NVR must establish that Ms. Donahue acted with bad faith or gross negligence in order to satisfy the culpable state of mind element. Pl. Opp. at 10, 17. NVR submits that the record provides ample grounds for a finding of gross negligence or bad faith, including the undisputed fact that Ms. Donahue destroyed information relating to

5

13756859v.2

her outside activities in the very course of compiling documents for production in this case. However, to show that Ms. Donahue acted with a culpable state of mind, NVR need only establish that she acted with ordinary negligence, not bad faith or gross negligence. *See Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. at 284, 290 (S.D.N.Y. 2009) ("In this circuit, a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence."). In destroying highly probative documents—the originals of her expense report and her day runners—while discovery was ongoing, both Ms. Donahue and her counsel acted with, at the very minimum, ordinary negligence. Even Plaintiffs acknowledge that Ms. Donahue was guilty of ordinary negligence in the management of her documents. Pl. Opp. at 10. That is all that NVR needs to show to establish that Ms. Donahue acted with a culpable state of mind.

**C.     NVR satisfies the relevance element both because Ms. Donahue acted in bad faith and because the spoliated documents were relevant.**

As Plaintiffs acknowledge (Pl. Opp. at 9), the Court may infer that the relevance element is met where there is a showing of gross negligence or bad faith.[4] In their opposition, Plaintiffs do not point to any specific evidence to suggest that Ms. Donahue destroyed and altered her expense report and her day runners in good faith. Rather, Plaintiffs simply assert that the record speaks for itself. Pl. Opp. at 12-13, 17-18. Indeed, the record does speak for itself. The record shows that Ms. Donahue intentionally concealed something on her expense report, proceeded to destroy the only original copy of that expense report in the middle of discovery, and then could not or would not offer an explanation as to what she concealed. The record also shows that Ms. Donahue destroyed the originals of her day runners—the only contemporaneous records of her

---

[4] The rationale of the inference is to prevent spoliators like Ms. Donahue from profiting from their own misconduct. *See Residential Funding*, 306 F.3d at 108-09 ("Courts must take care not to 'hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed . . . evidence,' because doing so 'would . . . allow parties who have . . . destroyed evidence to profit from that destruction.'").

outside sales activities—again, in the middle of discovery.[5] And the record shows that Ms. Donahue altered her day runners in an attempt to conceal her outside sales activities—there is no evidence in the record to suggest or support any other explanation for the various discrepancies. These actions are, at the very least, grossly negligent, and, accordingly, warrant an adverse inference instruction.

Even in the absence of a finding of bad faith or gross negligence, it is clear that Ms. Donahue destroyed and altered evidence that was "relevant."[6] As explained in NVR's brief, the entries on the day runners that Plaintiffs produced show that Ms. Donahue regularly used her day runners to capture outside sales activities. *See* Def. MOL at 10. Based on that fact alone, a trier of fact could certainly infer that the information that Ms. Donahue altered or destroyed related at least in part to her outside sales activities.[7] The evidence that Ms. Donahue spoliated is, therefore, relevant to the claims and defenses at issue in this litigation. *See Residential Funding*, 306 F.3d at 108-09. Similarly, Ms. Donahue used her expense reports to record information

---

[5] Plaintiffs once again attempt to downplay the egregiousness of Ms. Donahue's actions by asserting that the day runners were not reliable indicators of her outside sales activities. Pl. Opp. at 19. However, even if the day runners were not 100% accurate, the day runners were still the only contemporaneous record of Ms. Donahue's outside sales activities, and, therefore, would have been the best available evidence of her outside sales activities.

[6] In contending that NVR must establish prejudice and that it must use some derivation of the word "prejudice" to satisfy this element (Pl. Opp. at 21-22), Plaintiffs once again misstate the law. While "relevance" in this context means more than "relevance" for purposes of Rule 401 of the Federal Rules of Evidence, there is no specific requirement to show prejudice. "Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Residential Funding*, 306 F.3d at 108-09.

[7] Plaintiffs state that "Defendant has presented no evidence that there are multiple day runners containing unique information not already produced to Defendant." Pl. Opp. at 20, n.6. However, as described above, Ms. Donahue admitted in her testimony that she believed that she destroyed the originals of her day runners. Those originals would undoubtedly have shed light on the various discrepancies between the two versions of the day runners produced to NVR. Because Ms. Donahue destroyed those originals, it is proper to infer that the originals would have contained information related to her outside sales activities—information that is now unavailable. To find otherwise would reward Ms. Donahue for destroying probative evidence while discovery was ongoing.

related to her travel for outside sales activities. For example, as explained in NVR's brief, the expense report that she altered and later destroyed included information on other dates related to her tolls and business meals, both of which were probative of outside sales activities. *See* Def. MOL at 10-11. Like her day runners, the expense report that Ms. Donahue spoliated is, therefore, relevant for purposes of imposing an adverse inference instruction.

Plaintiffs further argue that the information that Ms. Donahue destroyed and altered was not relevant because it related to activities outside of the statute of limitations. Pl. Opp. at 14, 19. However, activities occurring outside of the statute of limitations period are not *per se* irrelevant—such activities can be useful in providing background information related to the claims at issue. *See Rudy v. Cons. Rest. Co.*, 2010 WL 3565418, at *1 (N.D. Tex. Aug. 18, 2010). The documents at issue are not limited in their evidentiary value to determining what Ms. Donahue was doing at a particular date and time. Had they been adequately preserved, the documents—which memorialized Ms. Donahue's activities over a span of several years—would provide information regarding her habits and her approach to her job as an SMR, in general. As such, the information that Ms. Donahue altered and destroyed would have been useful in establishing whether Ms. Donahue was "customarily and regularly" engaged in outside sales activities as an SMR, the core matter at issue in this case.

Plaintiffs also contend that NVR cannot establish relevance because the information that Ms. Donahue destroyed may have hurt NVR's case. Pl. Opp. at 20. The alterations that are obvious from the face of Ms. Donahue's day runners reflect a pattern of Ms. Donahue's attempting to minimize and obscure evidence of her outside sales activities.[8] Moreover, Plaintiff

---

[8] For example, as pointed out in NVR's brief, one version of the page from Ms. Donahue's day runner for April 2001 stamped "redacted" reflects that Ms. Donahue was scheduled to attend a "prestart" meeting in relation to "Lot 123" on April 9, while another copy of the same page not stamped "redacted" lacks this

8

does not specify, nor can NVR fathom, how the information that Ms. Donahue destroyed and altered could have hurt NVR's case.  Based on the many entries for outside sales activities in the day runners and expense reports that Plaintiffs produced to NVR, it is unimaginable that there was no evidence of outside sales activities on any of the various documents that Ms. Donahue spoliated.  *Any* evidence of outside sales activities would have been helpful in establishing that Ms. Donahue customarily and regularly engaged in outside sales activities.  Under these circumstances, it is absurd for Plaintiffs to argue that the evidence that Ms. Donahue altered and destroyed was not relevant because it may have bolstered her claims that she was not properly classified as an exempt outside salesperson.

### D. An adverse inference is the appropriate sanction, even if it results in dismissal.

Plaintiffs contend that the Court should not impose an adverse inference that Ms. Donahue was customarily and regularly engaged in outside sales activities because it would have the effect of dismissing Ms. Donahue's claims and, therefore, is not proportionate to her actions. Pl. Opp. at 22-23.  Ms. Donahue's actions, however, merit a severe sanction.  Ms. Donahue admitted to destroying the originals of her day runners as well as an expense report that contained evidence that she had previously taken steps to conceal.  Furthermore, the discrepancies on her day runners show that she also altered daily entries relating to her outside sales activities.  An adverse inference that she was customarily and regularly engaged in outside sales activities, therefore, is an appropriate response that is tied to the type of information that Ms. Donahue spoliated.  The Court should, therefore, impose the adverse inference, along with an order precluding Ms. Donahue from offering testimony or other evidence related to her sales

---

notation.  Def. MOL at 2.  NVR's brief includes several similar examples of alterations directly related to Ms. Donahue's outside sales activities.  Def. MOL at 2-3.

9

activities between August 2000 and December 2003, even if the adverse inference sanction results in the dismissal of Ms. Donahue's claim.[9]

## CONCLUSION

Accordingly, Defendant respectfully requests that the Court grant its Motion for Sanctions Regarding Plaintiff Megan Fox Donahue's Spoliation of Evidence.


Dated: October 11, 2011

                                          Respectfully submitted,
                                          /s/ Barry J. Miller
                                          SEYFARTH SHAW LLP

| Richard L. Alfred | Lorie E. Almon |
|---|---|
| Barry J. Miller | 620 Eighth Avenue |
| Dana L. Fleming | New York, New York 10018 |
| James M. Hlawek | (212) 218-5500 |
| 2 Seaport Lane, Suite 300 | lalmon@seyfarth.com |
| Boston, MA 02210 | |
| (617) 946-4800 | |
| bmiller@seyfarth.com | |

                                          *Attorneys for Defendant NVR, Inc.*

                                          WOODS OVIATT GILMAN LLP
                                          William G. Bauer
                                          700 Crossroads Building, 2 State Street
                                          Rochester, NY 14614
                                          (585) 987-2800
                                          wbauer@woodsoviatt.com
                                          *Local counsel*

---

[9] NVR takes no position on Plaintiffs' assertion that the sanctions that NVR seeks must be imposed by a District Judge.  NVR does note that, even if Plaintiffs' assertion is accurate, a Magistrate Judge could presumably provide a report and recommendation as to the sanctions to be imposed, subject to review by the District Judge.

13756859v.2

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 11, 2011, I electronically filed the foregoing Reply Memorandum through the Court's ECF system, which sent notification of such filing to the following counsel of record for Plaintiffs:

> J. Nelson Thomas
> Thomas & Solomon LLP
> 693 East Avenue
> Rochester, New York 14607
> (585) 272-0540
> nthomas@theemploymentattorneys.com
>
>       By: /s/ Barry J. Miller
>            Barry J. Miller

13756859v.2