UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK TRACY, et al.,  on behalf of themselves
and all other  employees similarly situated,

                                   Plaintiff,

                                                            DECISION AND ORDER

                                                            04-CV-6541L

                    v.

NVR, INC.,

                                   Defendant.

_____

      Plaintiff Patrick Tracy, on behalf of himself and a class of plaintiffs who have opted in,

brings this action against defendant NVR, Inc. ("NVR") pursuant to the Fair Labor Standards Act,

29 U.S.C. §201 et seq. ("FLSA") and the New York Labor Law.  Commenced in 2004, this matter

presents claims for overtime compensation by and on behalf of Ryan Homes Sales and Marketing

Representatives ("SMRs") employed by NVR.  NVR claims that the SMRs are exempt from the

FLSA's overtime provisions under the outside sales exemption.  Plaintiffs disagree.

      In June 2007, the Court conditionally certified the matter as an FLSA collective action,

concluding that Tracy had met his minimal burden to justify issuance of notice to class members.

(Dkt. #136).  Since notice was issued, numerous SMRs have consented to join the litigation, and the

parties have spent four years conducting discovery and engaging in vigorous motion practice.

      NVR now moves to decertify the FLSA collective action, for summary judgment dismissing

the claims of three opt-in plaintiffs whose testimony allegedly establishes that they were correctly

classified as exempt outside salespersons, and to strike some of the evidence submitted by plaintiffs in opposition to the summary judgment motion. Plaintiffs have cross moved for certification of a class action under Fed. R. Civ. Proc. 23, for summary judgment in favor of the three opt-in plaintiffs that are the subject of NVR's summary judgment motion, and to strike some of the evidence submitted by NVR in support of the decertification and summary judgment motions.

For the reasons that follow, NVR's motion to decertify the collective action (Dkt. #616) is granted, plaintiff's motion for Rule 23 certification (Dkt. #693) is denied, and the remaining motions (Dkt. #607, #610, #613, #654, #662, and #679) are denied as moot.

## FACTS

In brief, this action challenges NVR's classification of its SMRs as "outside salespersons" for purposes of the FLSA. SMRs are engaged in selling new homes to be constructed in newly-developed housing communities. SMRs work on a commission basis, and are not expected to track or report their working hours to NVR. Their primary duty is to sell new, to-be-constructed homes, although the means by which SMRs accomplish that goal, and the amount of time they opt to allocate to each of the activities customarily associated with it, are largely within each SMR's personal discretion. Although SMRs are not assigned to a permanent office, their operations are based out of model homes or trailers in or near the real properties that are intended for development and sale by NVR.

## DISCUSSION

Familiarity with the pertinent claims and facts, as summarized below and described in detail in the Court's prior decision denying summary judgment to NVR (Dkt. #34), is presumed.

The FLSA requires compensation at one and a half time the regular rate when an employer requires the employee to work more than forty hours per week.  *See* 29 U.S.C. §207(a)(2).  To establish an FLSA claim or a parallel claim under the New York Labor Law, plaintiff must prove that: (1) he was an employee who was eligible for overtime (i.e., that he was not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated.  *See Barry v. Town of Elma*, 2005 WL 711842 at *2 (W.D.N.Y. 2005).

However, several categories are exempted from the FLSA's overtime compensation requirements, including those classified as "outside salespersons," generally defined as any employee who is, "customarily and regularly engaged away from his employer's business in . . . making sales [or] obtaining orders . . ."  29 C.F.R. 541.500.

Alleged exemptions are narrowly construed against the employer, and once Tracy has established a *prima facie* case by showing that he performed more than forty hours per week as an employee of NVR, for which he was not compensated at the statutory rate, NVR bears the burden of demonstrating that Tracy's SMR position is an FLSA-exempt "outside sales" position.  *See Arnold v. Ben Kanowsky, Ind.*, 361 U.S. 388, 392 (1960).


I.      **NVR's Motion for Decertification of the FLSA Collective Action**

In contrast to the lenient standard required for conditional certification of a collective action under the FLSA, the Court, with the benefit of a fuller record, must apply a more stringent standard in considering NVR's motion for decertification.  While the Second Circuit has not prescribed a specific course of analysis of a motion to decertify, courts in this circuit have traditionally looked to: (1) whether the factual and employment settings of the individual plaintiffs are disparate; (2) whether the defenses available to the defendant are individual to each plaintiff; and (3) the fairness

and procedural considerations militating for or against collective action treatment. *See Morano v. Intercontinental Capital Group, Inc.*, 2012 U.S. Dist. LEXIS 100830 at *18 (S.D.N.Y. 2012); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008). The burden to demonstrate these factors lies with plaintiffs. *Id.*

The Court is also mindful that the ultimate success of the plaintiffs' claims and NVR's defenses in this action will depend largely on the amount of time that SMRs generally spent on sales activities outside of the office setting, and thus, the factual similarity that the plaintiffs seek to demonstrate in response to the instant motion is appropriately focused upon that issue. *See generally Wage & Hour Op. Letter* FLSA 2007-2, 2007 WL 506574 at *3 (Department of Labor opinion letter explaining that sales associates who are frequently absent from the model home, at least one to two hours per day, twice a week, for the performance of indispensable components of sales efforts, is an exempt outside salesperson under the FLSA).

Upon careful consideration, I find that plaintiffs have failed to meet their burden to demonstrate that they (and the other SMRs in the putative class) had sufficiently similar factual and employment settings for purposes of the FLSA, that the defenses available to NVR would be similar for each plaintiff, or that the interests of fairness or judicial economy would be preserved by the further pursuit of this action as a collective one.

After four years of exhaustive discovery pertaining to plaintiff Patrick Tracy and a sample group of seven other SMRs, the factual record suggests that although SMRs had the same job description and duties, and that those duties included actions undertaken both in the "office" (that is, the model home or trailer near the properties upon which the SMR was attempting to sell to-be-constructed homes) and outside it, they had tremendous flexibility in terms of the manner in which they chose to allocate their time and resources to perform those activities. As a result, there are wide

discrepancies between the SMRs forming the representative sample, in terms of the average time each spent outside of the office.

The outside sales activities performed by SMRs included vising model homes and homesites, meeting with realtors, touring completed or under-construction homes, taking potential buyers on tours of the nearby community, inspecting model homes and sites owned by competitors, selling homes in other NVR communities, meeting with project managers and customers, demonstrating spec homes, and engaging in business development and marketing. SMRs were generally permitted to perform these activities in the manner and to the extent they chose. Different staffing models for different locations (for example, some had administrative staff members performing more of the in-office tasks to free up SMRs for outside sales, and some did not) also resulted in variations in outside sales time between different SMRs. In addition, the sales managers supervising the SMRs had varying expectations, and in some cases, imposed particular duty requirements that limited the amount of discretion SMRs had over some of their sales activities outside the "office." For example, one manager expected his SMRs to visit realtors outside the model home on a weekly basis. Others permitted their SMRs greater discretion, with visits to realtors once per quarter being sufficient. In some divisions, SMRs were required to attend preconstruction meetings with their customers which were often held offsite, or else chose to do so as a matter of course, while other divisions and SMRs did so infrequently. The frequency with which SMRs showed customers homes outside the model home ranged between 25% and 70% of the time, with some SMRs demonstrating a single home for a few minutes on each occasion, and others demonstrating multiple homes for an hour or two each. While some SMRs spent time "shopping the competition" for the bare minimum, once per quarter, others spent 1-3 hours every month doing so.

The evidence also demonstrates that in addition to individual SMRs performing sales activities outside of the office with varying frequencies and for varying time periods, the performance of such activities *by the same SMR* could vary widely over a short period of time, depending on myriad factors ranging from the demands of a particular prospective customer or the idiosyncrasies of a potential homesite or community, to the local economic climate – and even the climate outdoors.

Furthermore, the parties admit that there were no timekeeping requirements for SMRs, such that any and all evidence concerning how SMRs days were spent, and the amount of time devoted to outside sales activities, must of necessity derive from testimony by individual SMRs themselves, which can be expected to suffer from variances similar to that of the named plaintiff and the seven other exemplar collective action members.

Although plaintiffs correctly point out that in some cases, courts have certified collective and class actions for employees with similar job descriptions, training, duties, and compensation, those cases are distinguishable in that they involved employees who lacked discretion in deciding how to perform their duties. Here, it appears undisputed that SMRs had broad discretion to decide how to allocate their time – as borne out by the appreciable variations in the time spent on sales activities outside of the office by the exemplar SMRs. On balance, evidence of SMR estimates of the amount of time they spent away from the model home or trailer in a given week ranged from the "minutes" per month that named plaintiff Tracy alleges, to the 4-9 hours per week reflected in the testimony of some of the opt-in plaintiffs, and the 12-20 hours per week to which a non-plaintiff SMR attests.

Nor do the Supreme Court's observations in the recent case of *Christopher v. Smithkline Beecham Corp.*, 132 S. Ct. 2156, 2173 (2012), furnish an easy answer. In that case, the Supreme Court advised that in assessing the outside sales exemption, courts should perform a "functional"

analysis of the goals of a position within its own industry, rather than become distracted by minor differences in the way employees achieved those goals.  *Id*.  However, *Christopher* was concerned with the definition of "sales" as it pertained to pharmaceutical representatives whose job it was to obtain non-binding commitments from prescribers: whether a position's functional goal is to procure sales in the first place is manifestly a simpler question to answer uniformly for all persons in that position, than the issue of *what activities* a position's functional goal of making sales will generally require, and what proportion of those activities will have to be performed outside of the office.  The undisputed functional goals of the SMRs here – procuring the sale of new homes to be built on property situated away from the model home and ushering buyers through the sale and/or construction process – do not, by themselves, suggest a reasonable estimation of the proportion of "outside of the office" work time that would generally be necessary to accomplish them.

Furthermore, the defenses available to NVR will be equally individualized to each plaintiff. For example, plaintiffs must ultimately each prove that NVR had actual or constructive knowledge that they were working more than forty hours a week.  *See e.g.*, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 467-68 (S.D.N.Y. 2011).  Because NVR had no policy or practice relative to hours worked and kept no time records, "plaintiffs will have to demonstrate that each individual manager had actual or constructive knowledge that plaintiffs were performing off-the-clock work without proper compensation."  *Id*.  Such proof will require individualized testimony from every current or former NVR manager who supervised any of the putative class members during the relevant ten-year time period, and will be highly fact-specific.

Given the broad variations demonstrated by the exemplar SMRs, I conclude that it would be impossible to make a blanket determination concerning the FLSA exempt status of the entire class of putative plaintiffs in this case, or to extrapolate the experiences of the exemplar SMRs to the more

than one hundred opt-in plaintiffs.  The record demonstrates a wide variety of employment practices and time management requirements among the individual plaintiffs, which would require dozens of mini-trials to determine whether each employee's particular time away from the model home or trailer meets the "1-2 hours, at least 2 days a week" threshold indicated by the Department of Labor for outside salespersons.  *See Wage & Hour Op. Letter* FLSA 2007-2, 2007 WL 506574 at \*3 (Dept. of Labor 2007).  Such a result is ill-suited to a collective action.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (to proceed as a collective action, plaintiffs must be "similarly situated" with regard to whether an FLSA violation has occurred).  *See also Zivali*, 784 F. Supp. 2d 456 at 459; *Hinojos v. Home Depot, Inc.*, 2006 U.S. Dist. LEXIS 95434 at \*6-\*8 (D. Nev. 2006).

As such, the Court finds that considerations of fairness to the parties and judicial economy weigh heavily in favor of decertifying the collective action, as the Court is unconvinced that a fair determination of plaintiffs' claims can be made collectively, on the basis of representative evidence. *See Zivali*, 784 F. Supp. 2d 456 at 459.


## II.     Plaintiffs' Motion to Strike

In opposition to NVR's motion to decertify, plaintiffs have moved to strike affidavits submitted by NVR which reflect the testimony of SMRs who have not opted in to the instant case. Because the Court would reach the same conclusions of fact and law regardless of whether this information was considered, plaintiffs' motion to strike (Dkt. #654) is denied as moot.


## III.    Plaintiffs' Motion for Certification of a Class Action Under Fed. R. Civ. Proc. 23

Plaintiffs also move for certification of a class action pursuant to Fed. R. Civ. Proc. 23.

Plaintiffs bear the burden of establishing the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) fair and adequate representation of the class. A plaintiff must also qualify to pursue the class action under one of the subdivisions of Rule 23(b).  *See In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 51 (2d Cir. 2006); *Marisol A. v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997).   In considering a class certification motion, the Court must accept the allegations in the complaint as true.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001)(internal quotation marks omitted).   Although a court may consider material outside the pleadings to determine whether to class certification is proper, it "must not consider or resolve the merits of the claims of the purported class." *Id.* (emphasis added).  "The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' . . . and 'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Gortat v. Capala Bros.*,  257 F.R.D. 353 at 361-62 (E.D.N.Y. 2009). Nonetheless, the standard for granting certification under Rule 23 is more stringent than that for conditional certification of an FLSA collective action: in order to obtain class certification, plaintiffs must satisfy the four prerequisites of Rule 23(a) and one of the prerequisites of Rule 23(b).   The Court must undertake a "rigorous analysis" to determine whether the plaintiffs have proven each prerequisite by a "preponderance of the evidence."  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Capital, Inc.*, 546 F.3d 196, 203 (2d Cir. 2008).

Plaintiffs argue, pursuant to Fed. R. Civ. Proc. 23(b)(3), that their experiences are typical of the putative class, that common legal and factual issues predominate over the individual issues presented, and that a class action will be superior to a series of fractured, separate lawsuits.

I disagree.  Although plaintiffs allege that the basis for their claims is a uniform set of job duties, the evidence, as discussed above, shows that SMRs employed by NVR performed different subsets of job duties, with varying emphasis on the performance of sales functions outside of the office, both between different SMRs, and between different time periods worked by the same SMR. Because the plaintiffs' claims pertain to different SMRs in different locations, under different managers, who performed duties outside of their offices to varying degrees and in different ways, the plaintiffs' claims – as well as any determinations to be made concerning damages – are too highly individualized to form the basis for a class action.  *See generally Comcast Corp. v. Behrend*, ___ S. Ct. ___, 2013 U.S. LEXIS 2544 (2013) (reversing district court's grant of Rule 23 class certification where plaintiffs cannot provide a method for computing damages that takes into account all pertinent differences between the putative class members); *Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (certification of class action under Fed. R. Civ. Proc. 23 is denied where broad disparities between employees' job settings, caused by broad discretion given to managers, would require resolution of their discrimination claims by means of a series of "mini-trials" rather than a single action).

On balance, I find that plaintiffs simply have not demonstrated by a preponderance of the evidence that certification of this action is appropriate – specifically, I find that common legal and/or factual issues do not predominate over individualized claims, and that the interests of judicial economy would not be served by the hundreds of fact-intensive "mini-trials" that a class action of this nature would require.  Accordingly, the plaintiffs' motion for certification of a class action under Fed. R. Civ. Proc. 23 is denied.

This action will therefore proceed solely on behalf of the named plaintiff, Patrick Tracy.

IV.     **NVR's Motions and Plaintiffs' Cross Motions for Summary Judgment, and NVR's Motion to Strike Plaintiffs' Affirmations**

Defendant moves to dismiss the claims of opt-in plaintiffs Amber Wilcox, Jessica McKnight and Megan Grey, because the testimony and records of each demonstrated that they performed sales activities outside the office for far more than the 1-2 hour, twice-per-week threshold suggested by the Department of Labor. *See Wage & Hour Op. Letter* FLSA 2007-2, 2007 WL 506574 at *3 (Dept. of Labor 2007). Specifically, in the average week, Wilcox expended over nine hours and McKnight over four hours, on such activities, and Grey testified to significant sales work outside the office, logging hundreds of miles on trips to homesites and other sales communities over the relevant reporting periods. Wilcox, McKnight and Grey oppose the motions and cross move for summary judgment in their favor, and argue that the activities they performed away from the office were not integral to their sales. In reply, NVR cross moves to strike affirmations submitted by Wilcox, McKnight and Grey which allegedly conflict with their earlier testimony.

Because NVR's motion to decertify the collective action is granted, and named plaintiff Patrick Tracy is the only remaining plaintiff in this action, NVR's motions for summary judgment and to strike, and the cross motions by Wilcox, McKnight and Grey, are dismissed as moot.

## CONCLUSION

For the foregoing reasons, NVR's motion to decertify this FLSA collective action (Dkt. #616) is granted, and plaintiffs' motion to certify a Rule 23 class action (Dkt. #693) is denied. NVR's motions for summary judgment (Dkt. #607, #610, #613), plaintiffs' cross motion for summary judgment (Dkt. #662), NVR's motion to strike (Dkt. #679), and plaintiffs' motion to strike (Dkt.

#654) are denied as moot.  This action will proceed solely on behalf of the named plaintiff, Patrick

Tracy, and the claims of all other, opt-in plaintiffs are hereby dismissed, without prejudice.

      IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      April 29, 2013.