UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------- X
PATRICK TRACY, :
:
       Plaintiff, :
:
  v. :
: Case No. 04-CV-06541 DGL (P)
NVR, Inc., :
:
       Defendant. :
:
---------------------------------------------------- X

**DEFENDANT NVR, INC.'S SUPPLEMENTAL PRETRIAL MEMORANDUM**

Of Counsel:

Lorie E. Almon
Richard L. Alfred
Barry J. Miller
James M. Hlawek (*pro hac vice*)

Local Counsel:

William G. Bauer

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018

---------------------

Two Seaport Lane, Suite 300
Boston, MA 02210

WOODS OVIATT GILMAN LLP
700 Crossroads Building, 2 State Street
Rochester, NY 14614

*Attorneys for Defendant NVR, Inc.*

16214118v.2

Defendant NVR, Inc. ("NVR") submits this memorandum pursuant to the Court's Supplemental Pretrial Order dated September 26, 2013 (Dkt. 735), which set forth several topics on which the Court directed the parties to file submissions.

1. <u>Negative Tax Consequences</u>

Plaintiff cannot recover damages for any negative tax consequences that he might purportedly experience in the event that he is awarded a lump sum payment for unpaid overtime wages. In his Statement of Damages (Dkt. 726), Plaintiff cites only to *O'Neill v. Sears Roebuck & Co.*, 108 F. Supp. 2d 443, 446-47 (E.D. Pa. 2000) as authority for his request for such relief. But as courts from this jurisdiction have noted, *O'Neill* is very much an outlier, and not a single federal court within the Second Circuit has endorsed this approach. *See Longo v. Breda Transp., Inc.*, 2008 WL 852052, at *7 (S.D.N.Y. Mar. 31, 2008) (rejecting *O'Neill* in denying plaintiff's request for a tax deferential payment); *Meacham v. Knolls Atomic Power Lab.*, 185 F. Supp. 2d 193, 238 (N.D.N.Y. 2002), *vacated* on other grounds, 554 U.S. 84 (2008) (same).

Further, *O'Neill* is distinguishable in several material ways. First, the *O'Neill* court found it to be significant that the plaintiff had presented the opinion and testimony of a tax expert who calculated the negative tax consequences for which he sought to enhance his recovery. *See O'Neill*, 108 F. Supp. 2d at 447. Other courts, in contrast, have rejected claims for tax deferential payments because such claims are nothing more than speculation without the supporting opinion of an expert. *See, e.g., Shovlin v. Timemed Labeling Sys., Inc.*, 1997 WL 102523, at *3 (E.D. Pa. Feb. 28, 1997). Here, where Plaintiff has not provided the opinion of a tax expert, his request for a tax deferential payment is just the type of speculative claim that neither the Court nor a jury should address.

*O'Neill* also fails to support Plaintiff's claim for a tax deferential payment because the court in *O'Neill* faced a different type of claim that presented a different type of putative injury. The *O'Neill* court observed that the plaintiff in that case claimed that he had been terminated due to his

age in violation of the Age Discrimination in Employment Act, and "[t]he goal of the ADEA is to allow plaintiff to *keep* the same amount of money as if he had not been unlawfully terminated." 108 F. Supp. 2d at 447 (emphasis in original). The *O'Neill* court also found that the plaintiff's claim for a tax deferential payment to be especially compelling because his large front pay award had been discounted to account for present value. *Id.* According to the court, requiring the plaintiff to pay tax on a large lump sum representing future wages that had already been discounted for present value would be unfair. *See id.* In contrast to *O'Neill*, any award to Plaintiff would be based on back wages, rather than future lost wages, and there would be no discounting to account for present value.

The fact that *O'Neill* involved claims brought under the ADEA, as opposed to the FLSA, is also significant because the two statutes provide different mechanisms for making plaintiffs whole. Under ADEA, courts have wide discretion to award different types of damages, such as prejudgment interest, to make plaintiffs whole. *See, e.g., Albemarle Paper Co. v. Moody*, 422 U.S. 405, 420-21 (1975); *Reichman v. Bongisnore, Brignati, & Mazzotta, PC*, 818 F.2d 278, 281-82 (2d Cir. 1987). While liquidated damages are available under the ADEA, those damages are punitive and not intended to provide make-whole relief. *See, e.g., Thurston v. Trans World Airlines, Inc.*, 469 U.S. 111, 125-26 (1985); *Reichman*, 818 F.2d at 281-82. In contrast, liquidated damages under the FLSA are not punitive, but rather are intended to provide make-whole relief for the full consequences of the employer's failure to pay wages as required. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945). Because the FLSA provides a make-whole remedy, plaintiffs are not entitled to recover make-whole damages through other means, such as prejudgment interest. *See id.*; *Wright v. Zenner & Ritter, Inc.*, 1986 WL 409, at *2 (W.D.N.Y. Nov. 4, 1986). By the same rationale, Plaintiff cannot collect an enhanced damages award for any purported negative tax consequences, which is just another form of make-whole relief. *See O'Neill*, 108 F. Supp. 2d at

3

447. Plaintiff's proper means to recover for any purported negative tax consequences is through a claim for liquidated damages.

Because Plaintiff cannot seek damages for purported "negative tax consequences" as a matter of law, the issue should not be submitted to either the jury or the Court. If the Court nonetheless decides to allow Plaintiff to seek those damages, the issue should be decided by the Court. The recoverability of damages for purported "negative tax consequences" is intertwined with the recoverability of liquidated damages under the FLSA because, as noted above, Plaintiff cannot recover both types of damages. *See Brooklyn Sav. Bank*, 324 U.S. at 715; *Wright*, 1986 WL 409, at *2. Since the recoverability of liquidated damages under the FLSA is a question for the Court, *see, e.g., McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971), any question regarding the recoverability of damages for purported "negative tax consequences" that the Court might entertain should also be decided by the Court and not presented to the jury.

2.   Prejudgment Interest

As noted above, liquidated damages under the FLSA are intended fully to compensate a plaintiff for the delay in his receipt of payment for wages he is owed. *See Brooklyn Sav. Bank*, 324 U.S. at 715. As such, Plaintiff cannot collect both prejudgment interest and liquidated damages because awarding both species of damages would amount to double recovery. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988); *Wright*, 1986 WL 409, at *2. In view of this remedial regime, it is improper for either the Court or the jury to consider prejudgment interest unless and until Plaintiff's claim for liquidated damages had been abandoned or denied.

If the Court decides to allow Plaintiff to seek prejudgment interest before his claim for liquidated damages is terminated, the award of any such prejudgment interest should be decided by the Court, rather than the jury. Similar to the tax deferential payment discussed above, any award of prejudgment interest is intertwined with the recoverability of liquidated damages under the

4

FLSA, which is a question for the Court. The Court should, therefore, decide both issues to avoid jury confusion.

If the Court were to award prejudgment interest, it would be appropriate to use a federal rate as opposed to a New York state statutory rate. *See Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 150 (2d Cir. 2011) (where plaintiff collects under FLSA and NYLL, the federal prejudgment interest rate applies); *Central Hudson Gas & Elec. Corp. v. The Tug M/V Scott Turecamo*, 496 F. Supp. 2d 331, 353 (S.D.N.Y. 2007) (finding it appropriate to use federal prejudgment interest rate in federal question cases, so that the applicable rate does not depend on the arbitrary factor of where the federal court happens to sit).

3. <u>Calculation of Overtime</u>

Because Plaintiff testified throughout his deposition that he had no specific recollection of the hours that he worked and no documentary evidence that would refresh his recollection, Plaintiff will face substantial difficulty in making a *prima facie* claim for overtime liability and an even greater challenge in proving any damages. Because the parties are in agreement that there are no records of Plaintiff's working hours, he can only undertake to prove his damages as to unpaid overtime by providing estimates of the hours that he worked from his memory. However, any such estimates must contain a sufficient evidentiary basis for the jury to determine as a matter of just and reasonable inference that he actually worked those hours. *See Daniels v. 1710 Realty LLC*, 2011 WL 3648245, at *5 (E.D.N.Y. Aug. 17, 2011). During his deposition, Plaintiff testified that he could offer no such evidence. Indeed, Plaintiff testified to the following:

- He did not keep any documents that would reflect hours worked (Dkt. 618-25 (Tracy Dep. 171: 6:9));

- He never submitted a time sheet (Dkt. 618-25 (Tracy Dep. 183: 23-25)).

- He kept personal calendars with appointments for every year he was employed, but threw them away at the end of each year (Dkt. 618-25 (Tracy Dep. 24:15 - 25:15));

- The computer he used to track certain information about his marketing activities "died" and was recycled (Dkt. 618-25 (Tracy Dep. 29:12 -25; 30:19-31:3));

- He threw out marketing reports and competitive shop reports that reflected his marketing activities (Dkt. 618-25 (Tracy Dep. (31:14 -24));

- He does not know of any other documents that reflect the hours that he worked (Dkt. 618-25 (Tracy Dep. 171: 10-14));

- He is not able to quantify or approximate the number of times he took customers from the model home to home sites, which is an outside sales activity (Dkt. 618-25 (Tracy Dep. (108: 4-7));

- He is not able to quantify or approximate the percentage of customers that he took to home sites (Dkt. 618-25 (Tracy Dep. 111: 4:18));

- He cannot provide an estimate of how often he had after-hours appointments (Dkt. 618-25 (Tracy Dep. 175:9 - 177:24)); and

- He cannot provide estimates of the average number of appointments that he had with customers (Dkt. 618-25 (Tracy Dep. 181:6 181:13)).

In light of that testimony, Plaintiff will be unable to provide the evidentiary basis needed to establish liability or prove damages, unless he can provide some credible explanation as to how he was able to refresh his memory more than eight years after the pertinent events took place and without any documentary evidence to assist in that endeavor.

4. Instructions on the Law

The Court should present the following materials generated by the U.S. Department of Labor to the jury:

1) Wage & Hour Div. Op. Letter, January 31, 1964, 1964 DOLWH LEXIS 156 (concluding that the outside salesperson exemption applied to salesman stationed at model home);

2) Wage & Hour Div. Op. Letter, April 21, 1964 DOLWH LEXIS 198 (for salesman stationed at model home, leaving model home would be "away" from the employer's place of business, even if all property shown to prospects is within the tract on which the model home is located);

6

3) Wage & Hour Div. Op. Letter 2007-1, January 25, 2007 (applying outside sales exemption to new home sales employees);

4) Wage & Hour Div. Op. Letter 2007-2, January 25, 2007 (new home sales employee who leaves employer's place of business for "one or two hours, one or two times a week, to engage in selling or sales-related activities" properly subject to outside sales exemption);

5) DOL Field Operations Handbook § 22e06(c) (1965) ("real estate salesman" operating from model home on tract of land on which homes are to be built will generally qualify for outside sales exemption); and

6) DOL Field Operations Handbook § 22f06(c) (Nov. 29, 2010) (same).

All of the materials listed above are likely to be of considerable assistance to the jury in applying an otherwise abstract legal standard to the facts of this case. One factor that makes these materials uniquely useful to the jury is that they are specific to the context of the industry in which Plaintiff worked. In *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2161 (2012), the U.S. Supreme Court held that application of the outside sales exemption requires a functional approach "that views an employee's responsibilities in the context of the particular industry in which the employee works." *Id*. at 2170. The Court pointed to broad terms in the text of the statute, such as the provision that the exemption applies to employees "in the capacity of outside salesman," rather than merely specifying that the exemption applies to salesmen. *See id*. Consistent with *Christopher*, the jury's focus should be on interpretations made within the context of the industry in which Plaintiff worked. That is exactly what the materials set forth above would provide to the jury.

The federal statutory regime expressly contemplates that the Department of Labor will provide interpretative guidance to members of the public to promote compliance with the FLSA and

protect employers from liability based on inadvertent misinterpretations of the statute. *See* 29 U.S.C. § 259. Opinion Letters that DOL issues are drafted in response to inquiries from private parties and are released to the public at large, as well as the requesting party. Accordingly, the Opinion Letters are drafted in a tone that the general public may understand more readily than a statute or regulation. Because the Department of Labor has generated a substantial body of guidance regarding application of the outside sales exemption to new home sales employees over the years, the jury may benefit from having those materials in hand for convenient reference as they consider whether Plaintiff's job duties were consistent with his classification as an outside sales employee. By the same token, it is not practicable to read the full array of the DOL's guidance on the application of the exemption in the context at issue and expect them to remember that information comprehensively.

In presenting the materials to the jury, the Court should instruct the jurors to consider the materials to be valid statements of the law pertaining to the application of the FLSA's outside sales exemption to new home sales personnel. Such an instruction would be consistent with the Court's prior conclusion that the DOL's opinion guidance on the application of the outside sales exemption to new home sales employees is consistent with the governing regulations and should be given effect. *See Tracy v. NVR, Inc.*, 599 F. Supp. 2d 359, 362 n.1 (W.D.N.Y. 2009) (giving effect to January 2007 DOL Opinion Letters).

16214118v.2

Dated: October 2, 2013              Respectfully submitted,

/s/ Barry J. Miller

| SEYFARTH SHAW LLP | | WOODS OVIATT GILMAN LLP |
|---|---|---|
| Richard L. Alfred | Lorie E. Almon | William G. Bauer |
| Barry J. Miller | 620 Eighth Avenue | 700 Crossroads Bldg., 2 State St. |
| James M. Hlawek | New York, NY 10018 | Rochester, NY 14614 |
| 2 Seaport Lane, Suite 300 | (212) 218-5500 | (585) 987-2800 |
| Boston, MA 02210 | lalmon@seyfarth.com | wbauer@woodsoviatt.com |
| (617) 946-4800 | | |
| bmiller@seyfarth.com | | |

*Attorneys for Defendant NVR, Inc.*

### CERTIFICATE OF SERVICE

I certify that on October 2, 2013, I caused to be served a true and correct copy of the foregoing Defendant NVR, Inc.'s Submission in Response to Supplemental Pretrial Order by filing the foregoing document through the Court's ECF system, which is configured to effect delivery by NEF on Plaintiff's counsel:

> J. Nelson Thomas, Esq.
> Thomas & Solomon LLP
> 693 East Avenue
> Rochester, New York 14607
> (585) 272-0540
> nthomas@theemploymentattorneys.com

                                        s/Barry Miller
                                        Barry Miller